| | |
|---|---|
| PLASMA-THERM LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 8:15-cv-02785-CEH-TBM |
| | ) |
| MICRO PROCESSING TECHNOLOGY, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| MICRO PROCESSING TECHNOLOGY, INC., | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PLASMA-THERM LLC; ON SEMI-CONDUCTOR CORPORATION; SEMICONDUCTOR COMPONENT INDUSTRIES, LLC; and GORDON GRIVNA | ) |
| | ) |
| Counter-Defendants. | ) |
| | ) |

## DEFENDANT/COUNTER-PLAINTIFF, MICRO PROCESSING TECHNOLOGY, INC.'S COUNTERCLAIM AGAINST PLAINTIFF/COUNTER-DEFENDANT, PLASMA-THERM LLC, COUNTER-DEFENDANT, ON SEMICONDUCTOR CORPORATION, COUNTER-DEFENDANT, SEMICONDUCTOR COMPONENT INDUSTRIES, LLC, AND COUNTER-DEFENDANT, GORDON GRIVNA

Defendant/Counter-Plaintiff Micro Processing Technology, Inc. ("MPT") by and

through its attorneys, for its Counterclaim against Plaintiff/Counter-Defendant Plasma-Therm

LLC ("Plasma-Therm"), Counter-Defendant ON Semiconductor Corporation, Counter-

Defendant, Semiconductor Component Industries, LLC (collectively ON Semiconductor

Corporation and Semiconductor Component Industries, LLC are referred to as "ON Semi"[1]),

and Counter-Defendant Gordon Grivna ("Grivna"), alleges the following:

## NATURE OF THE ACTION

1.   This counterclaim seeks injunctive relief and damages, as specifically stated in herein, and asserts claims against Plasma-Therm under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, for misappropriation of trade secrets in violation of the common law and the Uniform Trade Secrets Act, § 688.001 *et seq.*, Florida Statutes, for breach of certain contracts between MPT and Plasma-Therm, and for fraud, and against ON Semi under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, for breach of certain contracts between MPT and ON Semi, for breach of the implied covenant of good faith and fair dealing, and for tortious interference with prospective business relationships. Further, MPT's claims against Plasma-Therm and ON Semi involve the same facts and circumstance, MPT cannot obtain complete relief or is subject to a substantial risk of incurring inconsistent obligations if ON Semi is not a party to this counterclaim, and ON Semi's presence as a counter-defendant will not deprive the Court of subject matter jurisdiction.

## THE PARTIES

2.   Defendant/Counter-Plaintiff MPT is and, at all times herein mentioned, was a corporation organized and existing under the laws of the State of  California, qualified and duly authorized under the laws of the State of California to transact business in the State of California as a manufacturer and supplier of micro processing equipment and services,

---

[1] ON Semiconductor Trading, Sarl, is a Swiss company that is a party to the License Agreement (Exhibit E), below, and related to and/or owned by ON Semi.  MPT reserves all of its rights to bring an action against or otherwise seek damages from ON Semiconductor Trading, Sarl and any other unnamed entity for, among other items, the relief sought herein.

including back-metal processing equipment and services utilized for the manufacture of semiconductors and to engage in all necessary business transactions in support thereof, and a resident California Corporation in good standing with its principle corporate offices located in Lafayette, California.

3. Plaintiff/Counter-Defendant Plasma-Therm is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of Florida, qualified and duly authorized under the laws of the State of Florida to transact business in the State of Florida, with its principle place of business located in St. Petersburg, Florida.

4. Counter-Defendants ON Semiconductor Corporation and Semiconductor Component Industries, LLC[2] are, and at all times herein mentioned were respectively a corporation and limited liability company organized and existing under the laws of the State of Delaware, qualified and duly authorized under the laws of the State of Arizona with their principle corporate offices located in Phoenix, Arizona.

5. Counter-Defendant Grivna is named as an "Indispensable Party" pursuant to Rule 19(a), Federal Rules of Civil Procedure, and not for purposes of seeking monetary damages against him as an individual. On information and belief, at all times herein, Grivna is and was a resident of Arizona and is and was a management employee of ON Semi, to wit, its chief engineer in charge of its "back metal processing" developmental project.

**JURISDICTION AND VENUE**

6. The counterclaims against Plasma-Therm are for patent infringement arising under the

---

[2] Upon information and belief, Semiconductor Components Industries, LLC is the principal domestic operating subsidiary of ON Semiconductor Corporation, and does business under the name of "On Semiconductor."

patent laws of the United States, Title 35, United States Code, including Section 271 et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338 (a).

7.   MPT is the owner of all right, title and interest in U.S. Patent No. 8,450,188 (the "'188 Patent") titled Method of Removing Back Metal from an Etched Semiconductor Scribe Street duly and properly issued by the United States Patent and Trademark Office on May 28, 2013. A true and correct copy of the '188 Patent is attached as Exhibit "A".

8.   MPT is the owner of all right, title and interest in U.S. Patent No. 9,153493 (the "'493 Patent") titled System for Separating Devices from a Semiconductor Wafer duly and properly issued by the United States Patent and Trademark Office on October 6, 2015. A true and correct copy of the '493 Patent is attached as Exhibit "B".

9.   MPT is the owner of all right, title and interest in U.S. Patent No. 8,906,745 (the "'745 Patent")[3] titled Method Using Fluid Pressure to Remove Back Metal from Semiconductor Wafer Scribe Streets duly and properly issued by the United States Patent and Trademark Office on December 9, 2014. A true and correct copy of the '745 Patent is attached as Exhibit "C".

10. On information and belief, Plasma-Therm is engaged in the design, manufacture and sale within the United States, offering for sale in the United States, use within the United States, importation into the United States, and sale after importation into the United States of back metal processing machines and related equipment and/or components.

11. On information and belief, ON Semi at all relevant times herein alleged and commencing as early as January 4, 2011, or possibly sooner, and through the present time, has

---

[3] The '188 Patent, '493 Patent, and '745 Patent are collectively referred to as the "Patents-In-Suit."

4

been engaged with Plasma-Therm's technical staff and management in a joint development project conducted at Plasma-Therm's facilities in Saint Petersburg, Florida to build back metal processing (after plasma dicing) machinery and equipment, and in the course thereof, has encouraged and assisted Plasma-Therm in its infringements on MPT's back metal processing method and design patents, to wit, the Patents-In-Suit, and misappropriating MPT's technology, including its trade secrets relating thereto. In the course of so acting, Grivna, ON Semi's Chief Engineer in charge of its back metal processing project, personally worked closely with Plasma-Therm's technical staff and management at Plasma-Therm's Saint Petersburg, Florida facilities, staying sometimes as long as a week at a time.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391.

*The Related State Pendent Counterclaims Against Plasma-Therm:*

13. Plasma-Therm and MPT entered into Confidential Disclosure Agreements dated August 2011 and June 16, 2015 regarding the confidential treatment of the parties' respective Intellectual Property, which include the parties' proprietary patents and trade secrets, and which would include the Patents-In-Suit. The Confidential Disclosure Agreements contain a venue selection provision that requires disputes thereunder to be litigated in Florida. True and correct copies of the Confidential Disclosure Agreements are attached as Exhibit "D" and "D-1".

14. MPT also brings counterclaims against Plasma-Therm that are based in Florida law for misappropriation of MPT's trade secrets related to the Patents-In-Suit.

15. This Court, therefore, has and should exercise pendent jurisdiction over the Florida state law based claims and entertain those claims in this venue pursuant to 28 U.S.C. § 1367.

16. ON Semi and MPT entered into a License Agreement dated August 25, 2014, which has a venue selection provision under which the parties agreed to have any disputes relating to either party's technology and/or patents litigated in the U.S. District Court for the Northern District of California and under California law.[4] However, waiving the agreed venue provision and in violation of its aforesaid contractual obligation under the venue selection provision, on April 14, 2016, a few months after Plasma-Therm filed this action seeking a declaratory judgment of non-infringement related to the Patents-In-Suit, ON Semi instituted its own separate action in the U.S. District Court for Arizona, in Phoenix, Case Number 2:16-cv-01055-DLR seeking, among other things, correction of the "Inventorship" of the Patents-In-Suit and other claims against MPT, all involving the Patents-In-Suit that are the subject of this action. The "Inventorship" claim filed by ON Semi in the Arizona case alleges Grivna was the "Inventor" or Co-Inventor of the Patents-In-Suit that are the subject of this action. A true and correct copy of the License Agreement between ON Semi and MPT is attached as Exhibit "E".[5] There is currently pending and under submission in the Arizona Court, MPT's Motion to Dismiss ON Semi's complaint or, in the alternative, to transfer that action either to the U.S. District Court for Northern California under the venue provision of the License Agreement or, alternatively, to this Court in the interests of judicial economy and to avoid potential conflicting rulings. Of the two actions involving the Patents-In-Suit, this action is now at issue with MPT's

---

[4] MPT asserts application of the License Agreement's Governing Law provision to its California state law based contract and tort claims against ON Semi.

[5] Because the terms of the License Agreement make its contents confidential, it should be filed under seal and a motion for the Court to accept the License Agreement under seal is being filed. Accordingly, MPT has attached a page labeled Exhibit E to this pleading as a placeholder for the License Agreement pending the Court's decision on whether to permit it to be filed under seal.

concurrent filing herewith of its Answer and Affirmative Defenses to Plasma-Therm's First Amended Declaratory Judgment Complaint (Doc. 40). Given the circumstances, including the Arizona Court having not ruled on MPT's pending motion, together with the nexus between the conflicting claims of the parties, it is proper for the Court to exercise its jurisdiction over the disputes between MPT and ON Semi presented in this Counterclaim, joining ON Semi as a party to this Counterclaim pursuant to Rule 13(h), Federal Rules of Civil Procedure.

17. This Court, therefore, has and should exercise its pendent jurisdiction over the California state law based claims and entertain those claims in this venue pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

18. At all times herein mentioned, each Counter-Defendant was the agent and employee of every other Counter-Defendant, and each of them, and, in doing the things herein complained of, acted within the scope, course, and authority of their agency and employment. Furthermore, ON Semi entered into a conspiracy with and materially assisted and aided and abetted the fraudulent and other wrongful and unlawful conduct engaged in by Plasma-Therm as is further alleged below in this Counterclaim. The assistance ON Semi gave to Plasma-Therm and its acts in furtherance thereof included, but were not limited to, the following:

(a)      Encouraging and assisting Plasma-Therm in its infringements of the Patents-In-Suit and in misappropriating MPT's technology, including its trade secrets, employed in the separation of back metal from semiconductor wafers, as part of the semiconductor manufacturing process;

(b)      Encouraging and assisting Plasma-Therm's manufacturing of apparatuses and

machinery for separation of the back metal from semiconductor wafers employing MPT's proprietary designs and methods, embodied in the Patents-In-Suit, as well as MPT's technology, including its proprietary trade secrets;

(c)     Concealing from MPT that it was working on a joint development project with Plasma-Therm to build a back metal separating apparatus so Plasma-Therm could sell and/or supply such apparatuses to ON Semi and provide same for sale to other customers and/or potential customers of MPT, knowing all the time that MPT was working with Plasma-Therm while laboring under the expectation that Plasma-Therm would be selling MPT machines and equipment, utilizing the Patents-In-Suit and MPT's technology, and in order to sell same to Plasma-Therm customers under a referral or other joint marketing distribution agreement, while MPT did not know, due to ON Semi's concealment of the material fact that ON Semi was secretly working on a joint development of a back metal separating solution with Plasma-Therm and the joint development of a back metal separating apparatus or machine, and due to the corresponding intentional misrepresentations by Plasma-Therm that it was not seeking to compete in the marketplace nor with MPT in the sale of a back metal separating machines, apparatuses and equipment, which concealment and affirmative misrepresentations are set forth below with more particularity in paragraphs 23-25 and 61-67 of this Complaint;

(d)     Other conduct, to be shown in accordance with proof, in furtherance of a joint effort by ON Semi and Plasma-Therm in effecting the use by Plasma-Therm of MPT's Patents-In-Suit and trade secrets to take the benefit of MPT's back metal separating intellectual property, including the Patents-In-Suit, from it and to effect the infringement and misappropriation of such by Plasma-Therm in contravention of the reasonable expectation

MPT derived from the promises and obligations made to MPT by ON Semi arising from the Licensing Agreement as to the use and ownership thereof.

19. Beginning in or about August 2010, and continuing through the present time, MPT has been and is engaged in a mutual business relationship for profit with ON Semi as a manufacturer/supplier to ON Semi of machinery and equipment, to wit, an apparatus utilized in one of the important steps in the manufacturing process of semiconductors, called alternately, "back metal cleaving;" "back metal separation;" and/or "back metal processing (in this pleading, "BMP"). For years, the semiconductor industry has been in search of faster, more efficient and less wasteful methods to separate the ***non-useable*** portion of back metal from the areas bordering the semiconductor devices (the "die"), which are fabricated as portions of "wafers" after the process of plasma dicing. The wafers are made of the material from which the die are created, but which also include the useable back metal found on the back side of each die. The separation process includes "breaking" the back metal in the "streets" which allows the hundreds of thousands of die on each wafer to be individualized for the later use of the semiconductors downstream. The search has focused on developing a method that will do so in a way that can yield the highest number of die from each wafer while doing the least damage in the process to the individual die, thereby utilizing the maximum amount of the extremely expensive wafer material, in the least amount of time possible, and with the minimum amount of human interaction with the wafers. Semiconductor manufacturers invest hundreds of millions of dollars in their production line machines utilized in each of the steps in the multi-step process to produce a semiconductor. An earlier step, before BMP, is commonly referred to as "plasma dicing" and/or "etching". That step involves removing all or

substantially all of the wafer material from between "the would be die" so that the individual die is ready for processing in the next steps. The limited areas that are etched or diced in which wafer material is removed, are referred to as the streets, defining their borders (visualize a grid), leaving the remaining wafer material to be transformed into the individualized die. The semiconductor devices are on what is termed the top side of the wafer. The bottom side ("back" or "flip side") of the wafer is made of metal, hence the term back metal. The back metal, except that in the "streets" is intended to be part of the die, as it works as a conductor of electricity and heat. Once the streets have had the wafer material "diced" out of them, there remains on the back side of the wafer a solid surface of back metal corresponding to each of the individual dies. This results, looking down from the top side of the wafer, in areas configured in hollowed out "streets" bereft of wafer material (the wafer material having been removed, etched out) with only the back metal in the street remaining visible (like infinitesimally narrow canals with a metal bottom). At this point the wafers are ready for the BMP, meaning that each of the die will be separated from each other by virtue of the metal in the streets being cut or broken and thus removed. One of the most important aspects of this process is not to waste die in the process, by removing the back metal in the streets without destroying or damaging individual die and adjacent, neighboring die. In the BMP, it is the goal to minimize the amount of back-metal remaining along the bordering edges of the die, to allow a maximum yield of undamaged, "cleanly cut" die (meaning no pieces of broken back metal hanging on the edges after the breaking in the streets) per wafer. Thus, the semiconductor die, sometimes hundreds of thousands, mounted on the wafer with adhesive tape of special quality and function, are separated and freed from the back metal of their neighboring die at the juncture of the streets,

while the tape with its special adhesive quality keeps them sufficiently in place to allow the next step in the process. That next step in the manufacturing process is called "pick and place", which is one step removed from the semiconductor manufacturer's next step which is the "packaging" of the die.

20. From in or about August 2010, through on or about November 27, 2015, a date upon which MPT sent ON Semi a "cease and desist" letter requesting ON Semi cease using MPT's intellectual property in a joint BMP development project, which MPT had just learned through Grivna, ON Semi had been engaged in with Plasma-Therm, MPT had been jointly working with ON Semi in seeking BMP solutions and, in particular, with Grivna. A true and correct copy of the "cease and desist" letter to ON Semi is attached as Exhibit "F". During those years, MPT and ON Semi employed a protocol which they jointly developed and agreed to employ during the joint development project for identifying ideas that were thereby deemed to be owned by the party who sent the other a written disclosure by which that party claimed the idea as its own. This protocol was employed respectively by MPT's CEO, P.C. Lindsey, and Grivna on behalf of their respective employers MPT and ON Semi. MPT was diligent in applying that protocol and documented the ideas P.C. Lindsey claimed, which included those leading to and underlying each of the Patents-In-Suit.

21. Pursuant to an Equipment Purchase Agreement ("EPA") dated July 19, 2013, MPT supplied ON Semi with a BMP machine that incorporated the design and methods sets forth in MPT's '493 patent and ON Semi's "stylus" patent, which MPT, on information and belief, alleges continues to be operated by ON Semi's production team operating in its Malaysia semiconductor manufacturing facilities. The License Agreement (Exhibit E) includes the

respective utilization of MPT's and ON Semi's patents. The License Agreement (Exhibit E) precludes ON Semi's use of MPT's BMP patents, including the Patents-In-Suit, or trade secrets to have any third party build BMP machines and related equipment for sale to ON Semi or any other person or entity.

22. Commencing at or about the time MPT entered into its first Confidential Disclosure Agreement (Exhibit D) between it and Plasma-Therm through on or about the time on November 27, 2015, when MPT sent a "cease and desist" letter to Plasma-Therm that is similar to the aforesaid one MPT sent ON Semi, MPT was engaged in an effort to persuade Plasma-Therm to enter into a business relationship whereby it would either be a distributor of MPT's BMP machines and equipment to Plasma-Therm's plasma-dicing customers (companies who had purchased Plasma-Therm machines for the first step plasma dicing process) or be a referral source for MPT to Plasma-Therm's customers. A true and correct copy of the "cease and desist" letter to Plasma-Therm is attached as Exhibit "G". In that effort, from time to time MPT allowed Plasma-Therm to test semiconductor wafers on which MPT had performed its BMP, including some supplied with MPT's consent to ON Semi. Also, in the course of evaluating MPT's BMP capabilities, Plasma-Therm supplied what it represented to be its first-step plasma-diced wafers for MPT to apply its BMP solution, which Plasma-Therm represented it would take back to its customers to determine whether there was sufficient interest level to consider the purchase of a MPT manufactured BMP machine to use in their semiconductor fabrication production process.

23. During the entire approximately five year period MPT sought to engage Plasma-Therm in some form of joint business relationship to the time immediately before it sent Plasma-

Therm and ON Semi the aforesaid "cease and desist" letters in November 2015, Plasma-Therm always represented to MPT and P.C. Lindsey, that Plasma-Therm did not have its own BMP solution or machinery and was not interested in designing and building such. Rather, Plasma-Therm was looking for a third party to supply that technology to its customers. Plasma-Therm's interest was to build and sell only the machines for the first step plasma dicing process and to find its customers a third party solution for the step "after plasma dicing", the BMP solution to be supplied by MPT. MPT, therefore, worked closely with Plasma-Therm under the mutual Confidential Disclosure Agreements sharing, in the course thereof, its solely owned intellectual property, including certain trade secrets in implementing its patented designs and methods for producing machines that effected a successful BMP solution after plasma dicing. When MPT thought it was close to making a deal with Plasma-Therm, it requested from it a Non-Compete Agreement at which time Plasma-Therm refused to consider signing one. However, it continued to deny at the time any interest in building any machine to compete with the MPT's BMP solution or to compete in that market at all, representing in an e-mail dated October 29, 2015 written by Jim Pollock, Plasma-Therm's director of sales, in pertinent part, as follows:

> we…are…unwilling to sign a document that says we will never design/build a competing product…we are not interested in spending our limited resources on a BMS product and would only do so if it became absolutely necessary…Frankly speaking if we were interested in designing/building BMS equipment we would have done so already. By refusing to move forward without a non-compete, you are forcing us to look at any/all alternatives.

A true and correct copy of Mr. Pollock's email is attached as Exhibit "H".

24. Pursuant to the above relationships between MPT and Plasma-Therm, and MPT and ON Semi, respectively, MPT justifiably relied upon its aforesaid, separate agreements with

each of them, which promised confidentiality and non-disclosure, and Plasma-Therm's affirmative representations that it was not interested in nor building BMP machines, in sharing its ideas and some of its trade secrets with them and allowed Grivna and Plasma-Therm's Chief Technical Officer, Russ Westerman, ("Westerman") to visit MPT's facilities in Lafayette, CA and to examine its BMP machine on site there. Furthermore, in such justifiable reliance, MPT similarly allowed Grivna to visit its facilities and view its work methods including trade secrets. It allowed the ON Semi's Malaysia team that was implementing use of MPT's machine that embodied the design and method in its '188 patent to similarly view such operations and methods on a visit that extended over a week in March 2015.

25. On information and belief, ON Semi through Grivna, shared MPT's ideas and trade secrets related to and including the Patents-In-Suit with Plasma-Therm or, alternatively, Plasma-Therm gained access to MPT trade secrets as a result of MPT's justifiable reliance on Plasma-Therm's representations in the Confidential Disclosure Agreements and repeated assurances it was not a competitor with MPT in the BMP market on the following occasions, amongst others that will be supplied in accordance with proof at trial:

(a) In a one week visit to Plasma-Therm's facilities in Florida commencing on or about January 17, 2011;

(b) In a one week visit to Plasma-Therm's facilities in Florida commencing on or about May 23, 2011;

(c) A visit to Plasma-Therm's facilities in Florida commencing sometime on or about the week following Labor Day 2011, closely following MPT's disclosure to Grivna in an attachment to an email of P.C. Lindsey's idea that lead to MPT's '188 Patent's "Flip and

14

Cut" method;

(d)     Meeting with Plasma-Therm representatives in Santa Clara, CA for two days commencing on or about February 4, 2015, immediately following testing performed with Grivna and P.C. Lindsey present at ON Semi's Malaysia facility of MPT's apparatus embodying MPT's '493 Patent;

(e)     On or about February 10, 2015, Plasma-Therm's CTO Westerman visits MPT's Lafayette facilities where he inspects its apparatus employing the '493 patent; and

(f)     ON Semi's Malaysia BMP team visits MPT's facilities over an approximately two week period in March, 2015.

On information and belief, on the occasions Grivna worked with and visited and/or met with Plasma-Therm engineers during the ON Semi-Plasma-Therm joint BMP project, Grivna shared MPT trade secret information with Plasma-Therm and Plasma-Therm shared MPT trade secrets with ON Semi obtained on the above occasions and others, in accordance with proof.

26. Plaintiff is informed and believes and thereon alleges that by on or about late 2016, Plasma-Therm had entered into distribution agreements with one or more companies, the identities of which will be supplied in accordance with proof, to sell BMP devices embodying the use of MPT's intellectual property, including the Patents-In-Suit, and produced with the use of MPT's trade secrets.

27. It was not until sometime in October 2015, that MPT began to suspect Plasma-Therm's and ON Semi's improper conduct and some of the facts as described above.

**COUNT ONE**
**PATENT INFRINGEMENT - '188 PATENT**
**(Against Plasma-Therm)**

28. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

29. Plasma-Therm has infringed and continues to infringe directly and indirectly, through contributory and/or induced infringement, one or more claims of the '188 Patent by making, using, selling, and/or offering to sell in the United States and importing into the United States, without authorization or license from MPT, infringing products.

30. As a direct and proximate result of Plasma-Therm's infringement of the '188 Patent, MPT has suffered and will continue to suffer damage. MPT is entitled to recover from Plasma-Therm the damages suffered by MPT as a result of Plasma-Therm's unlawful acts.

31. On information and belief, Plasma-Therm has had knowledge of the '188 Patent through its participation in the industry and knowledge of MPT and the '188 Patent. On information and belief, Plasma-Therm has been and is infringing the '188 patent despite an objectively high likelihood that its actions constitute infringement of the '188 Patent. On information and belief, Plasma-Therm's infringement of the '188 Patent is willful and deliberate, entitling MPT to enhanced damages and reasonable attorneys' fees and costs, including but not limited to those available under 35 U.S.C. §§ 284 and 285.

32. MPT will continue to suffer irreparable harm for which there is no adequate remedy at law as a result of Plasma-Therm's ongoing infringement of the '188 Patent unless Plasma-Therm is enjoined by this Court.

## COUNT TWO
### PATENT INFRINGEMENT - '493 PATENT
### (Against Plasma-Therm)

33. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive,

as if fully set forth herein.

34. Plasma-Therm has infringed and continues to infringe directly and indirectly, through contributory and/or induced infringement, one or more claims of the '493 Patent by making, using, selling, and/or offering to sell in the United States and importing into the United States, without authorization or license from MPT, infringing products.

35. As a direct and proximate result of Plasma-Therm's infringement of the '493 Patent, MPT has suffered and will continue to suffer damage. MPT is entitled to recover from Plasma-Therm the damages suffered by MPT as a result of Plasma-Therm's unlawful acts.

36. On information and belief, Plasma-Therm has had knowledge of the '493 Patent through its participation in the industry and knowledge of MPT and the '493 Patent. On information and belief, Plasma-Therm has been and is infringing the '493 patent despite an objectively high likelihood that its actions constitute infringement of the '493 Patent. On information and belief, Plasma-Therm's infringement of the '493 Patent is willful and deliberate, entitling MPT to enhanced damages and reasonable attorneys' fees and costs, including but not limited to those available under 35 U.S.C. §§ 284 and 285.

37. MPT will continue to suffer irreparable harm for which there is no adequate remedy at law as a result of Plasma-Therm's ongoing infringement of the '493 Patent unless Plasma-Therm is enjoined by this Court.

<u>**COUNT THREE**</u>
**PATENT INFRINGEMENT - '745 PATENT**
**(Against Plasma-Therm)**

38. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

39. Plasma-Therm has infringed and continues to infringe directly and indirectly, through contributory and/or induced infringement, one or more claims of the '493 Patent by making, using, selling, and/or offering to sell in the United States and importing into the United States, without authorization or license from MPT, infringing products.

40. As a direct and proximate result of Plasma-Therm's infringement of the '493 Patent, MPT has suffered and will continue to suffer damage. MPT is entitled to recover from Plasma-Therm the damages suffered by MPT as a result of Plasma-Therm's unlawful acts.

41. On information and belief, Plasma-Therm has had knowledge of the '493 Patent through its participation in the industry and knowledge of MPT and the '493 Patent. On information and belief, Plasma-Therm has been and is infringing the '493 patent despite an objectively high likelihood that its actions constitute infringement of the '493 Patent. On information and belief, Plasma-Therm's infringement of the '493 Patent is willful and deliberate, entitling MPT to enhanced damages and reasonable attorneys' fees and costs, including but not limited to those available under 35 U.S.C. §§ 284 and 285.

42. MPT will continue to suffer irreparable harm for which there is no adequate remedy at law as a result of Plasma-Therm's ongoing infringement of the '493 Patent unless Plasma-Therm is enjoined by this Court.

### COUNT FOUR
**Misappropriation of Trade Secrets in Violation of Uniform Trade Secrets Act,
§ 688.001 *et seq.*, Florida Statutes
(Against Plasma-Therm)**

43. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

44. MPT is, and at all times herein mentioned was, a member of the class of persons sought to be protected by the Uniform Trade Secrets Act. Fla. Stat. §688.002(3). MPT was in possession of the trade secrets which will be supplied in accordance with proof that are subject of this claim and related to the use of the Patents-In-Suit.

45. MPT's trade secrets had economic value.

46. MPT, in addition to securing Plasma-Therm's written promises in their Confidential Disclosure Agreements to maintain MPT's trade secrets in confidence, made other reasonable efforts to ensure that its trade secrets remained a secret with password secured computers; entry and lighting security at its offices.

47. At a point subsequent to in or about June 13, 2011 as more fully described above, and continuing to the present time, Plasma-Therm misappropriated the above-described trade secrets of MPT by disclosing and utilizing same without MPT's consent, except to the extent that "consent" was given in reliance upon Plasma-Therm's false pretenses and fraudulent representations as hereinabove alleged and which "consent" was thereby vitiated, in order to gain an economic advantage to MPT's detriment.

48. As a direct and proximate result of Plasma-Therm's misappropriation of MPT's trade secrets, MPT has suffered actual damages in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

49. As a further direct and proximate result of Plasma-Therm's misappropriation of MPT's trade secrets, MPT has suffered general damages in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

50. As a further direct and proximate result of Plasma-Therm's misappropriation of MPT's

trade secrets, Plasma-Therm was unjustly enriched to be provided in accordance with proof.

51. By virtue of Plasma-Therm's above-described willful and malicious conduct, MPT is entitled to reasonable attorney's fees under Fla. Stat. §688.005.

**COUNT FIVE**
**Misappropriation of Trade Secrets – Common Law**
**(Against Plasma-Therm)**

52. MPT refers to and incorporates herein by reference Paragraphs 1 through 27 and 45 through 50 as if fully set forth herein.

53. The aforesaid conduct constitutes Misappropriation of Trade Secrets under the common law.

**COUNT SIX**
**BREACH OF WRITTEN CONTRACT**
**(Against Plasma-Therm)**

54. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

55. On or about June 13, 2011, MPT and Plasma-Therm entered a written contract as described in Paragraph 22, as a Confidential Disclosure Agreement (Exhibit D).

56. MPT has performed all conditions, covenants, and promises required by it, including maintaining in confidence and not disclosing, except with consent of Plasma-Therm any of its confidential information covered by the Agreement.

57. MPT is informed and believes and thereon alleges that at some point in time between June 13, 2011 and through the present time, Plasma-Therm has and continues to breach the contract as described hereinabove.

58. As a direct and proximate result of Plasma-Therm's breach of contract, MPT has been

damaged as alleged herein in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

59. Injustice can be avoided only by completely enforcing Plasma-Therm's above-described promises, assurances and representations.

**COUNT SEVEN**
**FRAUD - MISREPRESENTATION**
**(Against Plasma-Therm)**

60. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

61. As aforesaid, Plasma-Therm from the start of its relationship with MPT represented that it was not engaged in its own development of a BMP solution and was not and did not intend to design, build nor sell BMP machinery.

62. But for those representations, MPT would not have entered the Confidential Disclosure Agreements (Exhibits D and D-1) including the last one on June 16, 2015, let alone share information related to its Patents-In-Suit and its trade secrets related thereto. The last such representation by Plasma-Therm to MPT was in writing in an email dated October 29, 2015 from Jim Pollock and consistent with what it had always represented orally over the years to MPT's CEO, P.C. Lindsey. The email, (Exhibit H) is alleged with greater particularity at paragraph 23 hereinabove.

63. The representations made by Plasma-Therm were, in fact, false. The true facts were:

(a)    Plasma-Therm had been working on developing its own design for a BMP solution for years commencing from a time presently unknown to MPT but which it will supply in accordance with proof;

(b)     Having convinced MPT it would eventually enter into a business relationship by stringing it along while testing its processed wafers; in the meantime, Plasma-Therm plotted and acted surreptitiously, including in concert with ON Semi, to steal MPT's intellectual property to use in developing a BMP solution before MPT could successfully market and/or enter a distribution agreement with one of the two or three Plasma-Therm competitors in plasma dicing to supply their customers with an MPT BMP solution. Plasma-Therm hoped to sell such machinery to those competitors' customers for Plasma-Therm's own profit. Plasma-Therm had secretly been working with ON Semi and Grivna to design, develop and build such equipment.

64. Thus, Plasma-Therm made the above-described representations knowing them to be false and intending to defraud and deceive MPT and with the intent to induce MPT to act in the manner herein alleged.

65. MPT, at the time these representations were made by Plasma-Therm, and at the time MPT took the actions herein alleged, to wit, sharing proprietary technical information, including its trade secrets with Plasma-Therm, supplying Plasma-Therm with the test wafers MPT processed from which Plasma-Therm was able to glean trade secret information; and allowing it to visit MPT's manufacturing facility. MPT was ignorant of the falsity of Plasma-Therm's representations and believed them to be true.

66. At all times herein mentioned, MPT, in reliance on the above-described representations and concealments, was induced to and did thereby entrust to Plasma-Therm knowledge and expertise relating to the manufacturing process of building machinery utilizing its patented design and methodology in the Patents-In-Suit.

67. MPT's reliance on Plasma-Therm's representations was justified because the above-described representations were made by managing agents of Plasma-Therm; to wit, Russ Westerman, Jim Pollack and Lateef Abdul, CEO of Plasma-Therm.

68. As a direct and proximate result of Plasma-Therm's wrongful conduct MPT did, in fact, (1) entrust proprietary information to Plasma-Therm; (2) devoted energy, effort and knowledge for the purpose of a joint business relationship Plasma-Therm, which, unbeknownst to MPT, Plasma-Therm never intended to enter into despite its representations to the contrary; (3) lost its investment in said proprietary information, proceeds from the production and sale of product wrongfully enjoyed and misappropriated by Plasma-Therm to their unjust enrichment; (4) lost profits on products manufactured with its trade secrets and proprietary information, sold without its consent, and without license in use of such information, and lost the value of future sales and business, all in an amount to be shown according to proof at trial.

69. As a further direct and proximate result of Plasma-Therm's wrongful conduct, MPT has sustained damages in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

70. In doing the acts herein alleged, Plasma-Therm, through its aforesaid high level policy making management employees, including those who made the policy decisions, and each of them, acted with oppression, fraud or malice, entitling MPT to punitive and/or exemplary damages in an amount sufficient to punish and/or set an example of Plasma-Therm.

**COUNT EIGHT**
**BREACH OF WRITTEN CONTRACT - LICENSE AGREEMENT**
**(Against ON Semi)**

71. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive,

as if fully set forth herein.

72. On or about August 25, 2014, MPT and ON Semi entered into the License Agreement as described in Paragraph 16 (Exhibit "E").

73. MPT has performed all conditions, covenants, and promises required by it, including maintaining in confidence and not disclosing, except with consent of ON Semi any of its confidential information covered by the License Agreement.

74. MPT is informed and believes and thereon alleges that at some point in time between August 25, 2014 and through the present time, ON Semi has and continues to breach the License Agreement as described in part hereinabove and as follows:

(a)    Filing an action in the U.S. District Court in Arizona concerning the same Patents-In-Suit that are subject of this action despite the License Agreement requiring suit to be filed in the U.S. District Court, Northern District of California;

(b)    On information and belief, providing MPT's confidential information and intellectual property, without MPT's consent, to Plasma-Therm in a joint development project it entered with Plasma-Therm to develop a BMP solution and build it a machine therefor in competition with the machine MPT built for ON Semi and from which MPT had an expectation of profits in the form of future sales to both ON Semi and to Plasma-Therm plasma dicing customers;

(c)    Failing to notify MPT of Plasma-Therm's infringements of the Patents-In-Suit and failing to provide MPT with written evidence of those infringements pursuant to provision 8.4;

(d)    Failing, under provision 11.4.2, to notify MPT of, on information and belief,

ON Semi's "intent" to have a Plasma-Therm manufacture an MPT "licensed product" under the License Agreement; and

        (e)      Other breaches in accordance with proof.

75. As a direct and proximate result of ON Semi's breach of contract, MPT has been damaged as alleged herein in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

76. Injustice can be avoided only by completely enforcing ON Semi's above-described promises, assurances and representations.

**COUNT NINE**
**TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR**
**DEALING UNDER THE LICENSE AGREEMENT**
**(Against ON Semi)**

77. MPT refers to and incorporates herein by reference Paragraphs 1 through 27 as if fully set forth herein.

78. The aforesaid conduct of ON Semi constitutes a Tortious Breach of the Implied Covenant of Good Faith and Fair dealing it has arising out of the License Agreement in as much as, by entering a joint development project with Plasma-Therm to build a competing BMP solution for ON Semi and that would be for sale by Plasma-Therm to its plasma dicing customers, ON Semi undermines and did undermine MPT's ability to sell additional such machines to ON Semi and/or to  customers of Plasma-Therm and could well deprive it of its longer term ability to sell its machine utilizing some or all of the Patents-In-Suit while employing the "stylus" technology and ON Semi's license of that patent to MPT, because under a specific provision of the Agreement, MPT loses all its patents licensed to ON Semi as well as to use ON Semi's stylus patent licensed to it if MPT fails to meet a sales quota of at

least 15 machines to customers other than ON Semi during the five year term of the License Agreement.

79. As a further direct and proximate result of ON Semi's wrongful conduct, MPT has sustained damages in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

80. In doing the acts herein alleged, ON Semi, through its high level policy making management employees, including those who made the policy decisions relevant to this action, and each of them, acted with oppression, fraud or malice, entitling MPT to punitive and/or exemplary damages in an amount sufficient to punish and/or set an example of ON Semi.

## COUNT TEN
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP AND ADVANTAGE
### (Against ON Semi)

81. MPT refers to and incorporates herein by reference Paragraphs 1 through 27 as if fully set forth herein.

82. The aforesaid conduct of ON Semi constitutes Intentional Interference with prospective business relationship and advantage in as much as at all relevant times herein referenced ON Semi was fully aware of the business relationship MPT was pursuing with Plasma-Therm; that without MPT's BMP solution Plasma-Therm did not have a viable BMP solution for its plasma-dicing customers.

83. As a direct and proximate result of ON Semi's said wrongful conduct, MPT has sustained damages in an amount to be shown according to proof at trial, but on information and belief in excess of $75,000.00.

84. In doing the acts herein alleged, ON Semi, through its high level policy making

management employees, including those who made the policy decisions relevant to this action, and each of them, acted with oppression, fraud or malice, entitling MPT to punitive and/or exemplary damages in an amount sufficient to punish and/or set an example of ON Semi.

## COUNT ELEVEN
### CONTRIBUTORY AND/OR INDUCED PATENT INFRINGEMENT - '188 PATENT
### (Against ON Semi)

85. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

86. ON Semi through its actions has contributed  and/or induced infringement of one or more claims of the '188 Patent by assisting Plasma-Therm in making, using, selling, and/or offering to sell in the United States and importing into the United States, without authorization or license from MPT, infringing products.

87. As a direct and proximate result of ON Semi's contributory and/or induced infringement of the '188 Patent, MPT has suffered and will continue to suffer damage. MPT is entitled to recover from ON Semi the damages suffered by MPT as a result of ON Semi's unlawful acts.

88. On information and belief, ON Semi has had knowledge of the '188 Patent through its participation in the industry and its consultation with and knowledge of MPT and the '188 Patent. On information and belief, ON Semi has been and is contributing to and/or inducing infringement of the '188 patent. On information and belief, ON Semi's contributory and/or induced infringement of the '188 Patent is willful and deliberate, entitling MPT to enhanced damages and reasonable attorneys' fees and costs, including but not limited to those available under 35 U.S.C. §§ 284 and 285.

89. MPT will continue to suffer irreparable harm for which there is no adequate remedy at law as a result of ON Semi's ongoing contributory and/or induced infringement of the '188 Patent unless ON Semi is enjoined by this Court.

<u>COUNT TWELVE</u>
**CONTRIBUTORY AND/OR INDUCED PATENT INFRINGEMENT - '493 PATENT**
**(Against ON Semi)**

90. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

91. ON Semi through its actions has contributed  and/or induced infringement of one or more claims of the '493 Patent by assisting Plasma-Therm in making, using, selling, and/or offering to sell in the United States and importing into the United States, without authorization or license from MPT, infringing products.

92. As a direct and proximate result of ON Semi's contributory and/or induced infringement of the '493 Patent, MPT has suffered and will continue to suffer damage. MPT is entitled to recover from ON Semi the damages suffered by MPT as a result of ON Semi's unlawful acts.

93. On information and belief, ON Semi has had knowledge of the '493 Patent through its participation in the industry and its consultation with and knowledge of MPT and the '493 Patent. On information and belief, ON Semi has been and is contributing to and/or inducing infringement of the '493 patent. On information and belief, ON Semi's contributory and/or induced infringement of the '493 Patent is willful and deliberate, entitling MPT to enhanced damages and reasonable attorneys' fees and costs, including but not limited to those available under 35 U.S.C. §§ 284 and 285.

94. MPT will continue to suffer irreparable harm for which there is no adequate remedy at law as a result of ON Semi's ongoing contributory and/or induced infringement of the '493 Patent unless ON Semi is enjoined by this Court.

## COUNT THIRTEEN
## CONTRIBUTORY AND/OR INDUCED PATENT INFRINGEMENT - '745 PATENT
### (Against ON Semi)

95. MPT refers to and incorporates herein by reference Paragraphs 1 through 27, inclusive, as if fully set forth herein.

96. ON Semi through its actions has contributed  and/or induced infringement of one or more claims of the '745 Patent by assisting Plasma-Therm in making, using, selling, and/or offering to sell in the United States and importing into the United States, without authorization or license from MPT, infringing products.

97. As a direct and proximate result of ON Semi's contributory and/or induced infringement of the '745 Patent, MPT has suffered and will continue to suffer damage. MPT is entitled to recover from ON Semi the damages suffered by MPT as a result of ON Semi's unlawful acts.

98. On information and belief, ON Semi has had knowledge of the '745 Patent through its participation in the industry and its consultation with and knowledge of MPT and the '745 Patent. On information and belief, ON Semi has been and is contributing to and/or inducing infringement of the '745 patent. On information and belief, ON Semi's contributory and/or induced infringement of the '745 Patent is willful and deliberate, entitling MPT to enhanced damages and reasonable attorneys' fees and costs, including but not limited to those available under 35 U.S.C. §§ 284 and 285.

99. MPT will continue to suffer irreparable harm for which there is no adequate remedy at law as a result of ON Semi's ongoing contributory and/or induced infringement of the '745 Patent unless ON Semi is enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant/Counter-Plaintiff MPT respectfully requests that the court enter a judgment:

(a) Finding that Plasma-Therm has infringed, contributorily infringed and/or induced infringement of the Patents-In-Suit.

(b) Finding that Plasma-Therm's infringement, contributorily infringement and/or inducement of infringement of the Patents-In-Suit was willful.

(c) Enjoining Plasma-Therm from continuing to infringe upon the Patents-In-Suit;

(d) Enjoining Plasma-Therm from continuing to contributorily infringe upon the Patents-In-Suit

(e) Enjoining Plasma-Therm from continuing to induce infringement upon the Patents-In-Suit

(f) Against Plasma-Therm for damages in an amount to exceed $75,000 for damages related to the Misappropriation of Trade Secrets under Florida Statute § 688.001 *et seq.,* along with attorney's fees under Florida Statute § 688.005;

(g) Against Plasma-Therm for damages in an amount to exceed $75,000 for damages related to misappropriation of trade secrets in violation of the common law;

(h) Against Plasma-Therm for damages in an amount to exceed $75,000 for damages for Breach of Contract related to the Confidential Disclosure Agreement;

(i)   Against Plasma-Therm for damages in an amount to exceed $75,000 for damages for Fraud and Misrepresentations and punitive and/or exemplary damages in an amount sufficient to punish and/or set an example of Plasma-Therm;

(j)  Against Plasma-Therm for damages adequate to compensate MPT for the patent infringement that has occurred, together with pre-judgment interest and costs;

(k)  That this case is exceptional and that an award to MPT is entered against Plasma-Therm for treble damages and pre-judgment interest under 35 U.S.C. §§ 284 and 284 and Rule 54(d) of the Federal Rules of Civil Procedure;

(l)  Against ON Semi for damages in an amount to exceed $75,000 for Breach of Contract related to the License Agreement;

(m) Against ON Semi for damages in an amount to exceed $75,000 for Tortious Breach of Implied Covenant of Good Faith and Fair Dealing and punitive and/or exemplary damages in an amount sufficient to punish and/or set an example of ON Semi;

(n)  Against ON Semi for damages in an amount to exceed $75,000 for Intentional Interference with Prospective Business Relationship and Advantage and punitive and/or exemplary damages in an amount sufficient to punish and/or set an example of ON Semi;

(o)  That ON Semi has contributorily infringed and/or induced infringement of the Patents-in-Suit;

(p)  That ON Semi's contributory and/or induced infringement of the Patents-in-Suit has been and is willful;

(q)  Enjoining ON Semi from further contributory infringement and/or induced

infringement of the Patents-in-Suit;

(r) That an award of damages is entered against ON Semi adequate to compensate MPT for the patent infringement that has occurred, together with pre-judgment interest and costs;

(s) That this case is exceptional and that an award to MPT is entered against ON Semi for treble damages and pre-judgment interest under 35 U.S.C. §§ 284 and 284 and Rule 54(d) of the Federal Rules of Civil Procedure; and

(t) Any other relief that Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Defendant/Counter-Plaintiff MPT respectfully requests a trial by jury on all issues so triable, pursuant to Rule 38, Federal Rules of Civil Procedure.

Dated: January 18, 2017                    Respectfully Submitted,

Anthony A. Ferrigno, Esq., Trial Counsel
LEAD TRIAL COUNSEL
Appearing, *Pro Hac Vice*
Email: a-trust-fraudlaw@msn.com
LAW OFFICES OF ANTHONY A. FERRIGNO
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (423) 744-4041
Facsimile: (925) 945-8792

Lawrence E. Laubscher, Jr., Esq.
Appearing *Pro Hac Vice*
Email: llaubscher@laubscherlaw.com
LAUBSCHER SPENDLOVE
1160 Spa Road, Suite 2B
Annapolis, MD 21403
Telephone: (410) 280-6608
Facsimile: (410) 995-2009

and

/s/ Robert D. Zebro
Robert D. Zebro
Florida Bar No. 691062
Donald H. Crawford II
Florida Bar No. 733431
COPE, ZEBRO & CRAWFORD, P.L.
14020 Roosevelt Boulevard, Suite 802
Clearwater, Florida 33762
Telephone: (727) 369-6070
Facsimile: (727) 431-9080
Email: rzebro@czcfirm.com
Email: dcrawford@czcfirm.com
*Attorneys for Defendant Micro Processing Technology, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Robert D. Zebro
Robert D. Zebro
Florida Bar No. 691062
COPE, ZEBRO & CRAWFORD, P.L.
14020 Roosevelt Boulevard, Suite 802
Clearwater, Florida 33762
Telephone: (727) 369-6070
Facsimile: (727) 431-9080
Email: rzebro@czcfirm.com
*Attorneys for Defendant Micro Processing Technology, Inc.*