**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| PLASMA-THERM LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICRO PROCESSING TECHNOLOGY, INC., | ) ) | |
| | ) | Civil Action No.: |
| Defendant. | ) | |
| | ) | 8:15-cv-02785-CEH-TBM |
| MICRO PROCESSING TECHNOLOGY, INC., | ) ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLASMA-THERM LLC; ON SEMI-CONDUCTOR CORPORATION; SEMICONDUCTOR COMPONENT INDUSTRIES, LLC; and GORDON GRIVNA | ) ) ) ) ) | |
| Counter-Defendants. | ) | |
| | ) | |
| | ) | |

**COUNTER-DEFENDANTS ON SEMICONDUCTOR
CORPORATION, SEMICONDUCTOR COMPONENT INDUSTRIES,
AND GORDON GRIVNA'S MOTION FOR SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.     BACKGROUND ................................................................................................. 1

II.    STATEMENTS OF MATERIAL FACTS ......................................................... 3

III.   LEGAL STANDARDS ...................................................................................... 5

     A.     Legal Standard For Summary Judgment.................................................. 5

     B.     Legal Standard for Breach of Contract under California Law................ 5

     C.     Legal Standard for Tortious Breach of Implied Covenant...................... 6

     D.     Legal Standard for Intentional Interference with Potential Advantageous Business Relationship ........................................................................................ 7

     E.     Legal Standard Regarding Discovery Obligations and Failure to Respond to Requests For Admission ........................................................................ 7

IV.   EFFECT OF MPT'S CONSCIOUS DECISION TO NOT PROSECUTE ITS CLAIMS AGAINST ON ................................................................................... 8

V.    ARGUMENT...................................................................................................... 9

     A.     There Is No Genuine Dispute of Material Fact Regarding This Court's Lack of Personal Jurisdiction over Mr. Grivna. ................................................. 10

     B.     There Is No Genuine Dispute Of Material Fact That ON Committed A Tortious Breach Of Any Implied Covenant Of Good Faith And Fair Dealing Under The License Agreement. ........................................................................... 13

     C.     There Is No Genuine Dispute Of Material Fact That ON Committed Intentional Interference With Prospective Business Relationship And Advantage ............... 14

     D.     There Is No Genuine Dispute Of Material Fact That ON Breached The License Agreement........................................................................................... 18

         1.     MPT's Claim that ON breached the License Agreement by filing correction of inventor and breach of NDA claims in Arizona must fail... 19

         2.     ON did not breach the License Agreement by providing PT with confidential information and intellectual property to build a competing machine. ................................................................................................. 21

         3.     ON did not breach the License Agreement by failing to notify MPT of Plasma-Therm's infringements. .............................................................. 22

4.	ON did not breach the License Agreement by not complying with non-existent provision "11.4.2." ..................................................................... 23

5.	MPT has failed to sufficiently allege any "other breaches in accordance with proof." ............................................................................................ 25

VI.	CONCLUSION ............................................................................................................. 25

As it relates to ON Semiconductor Corporation, Semiconductor Component Industries, and Gordon Grivna (hereafter referred to as the "ON Counter-Defendants" or "ON"), Defendant Micro Processing Technology's ("MPT") Amended Counterclaims (Dkt. 119; hereafter "Amended Counterclaims" or "AC") contain three claims for relief—identified as Counts 3–5, inclusive. The ON Counter-Defendants through counsel and pursuant to Federal Rule of Civil Procedure 56 and this Court's Case Management Order (Dkt. No. 29), hereby move this Court to enter summary judgment in ON's favor as to each of these three claims, which respectively assert: (1) breach of a written license agreement, (2) tortious breach of the implied covenant of good faith and fair dealing under the License Agreement, and (3) intentional interference with prospective business relationship and advantage.

I.      **BACKGROUND**

Despite the existence of related litigation between ON and MPT, MPT chose (for some unknown reason) to not assert its counterclaims against ON in the existing litigation, but instead to pull ON into the instant case as a third-party counter-defendant. As explained in ON's Motions to Dismiss (Dkt. 112 and 127), MPT's attempt to add ON after the period proscribed by this Court in its Case Management Order (Dkt. 29) and without seeking leave of the Court, was procedurally improper. Procedurally proper or not, ON has been involved in this case for the past six and one-half months. And during that time, has attempted to meet this Court's Scheduling Order and comply with the Court's Orders which were entered well before ON became involved in this case. To that end, ON has: (1) served interrogatories seeking to ascertain the factual basis underlying each of MPT's claims, (2) served requests for production seeking to understand what evidence, if any, MPT relied on in making its claims, (3) served requests for admission to narrow the scope of disputed issues, and (4) served a 30(b)(6) deposition notice on MPT to hear directly from MPT, the factual predicate for MPT's claims. (ON's Discovery Requests, served on June 30, 2017,

are attached to the concurrently filed Declaration of Isaac S. Crum (Dkt. 163; hereafter "Crum Decl.") as Exhibit 11.)

MPT, the party who dragged ON into this case, has done nothing. Absolutely nothing to litigate its claims against ON since dragging ON into this case. In short, MPT has failed to engage in the discovery process *at all*. That is,

- MPT has not served on ON its mandatory Rule 26(a) initial disclosures (*id.*, ¶¶ 45–46.);

- MPT has not served on ON any Rule 30 notices of deposition (*id.*, ¶ 71.);

- MPT has not served on ON any Rule 33 interrogatory requests (*id.*);

- MPT has not served on ON any Rule 34 requests for production (*id.*);[1] and

- MPT has not served on ON any Rule 36 requests for admission (*id.*).

And to add insult to injury, MPT has at the same time:

- *Failed* to respond substantively or even with objections to ON's Rule 33 interrogatory requests (*id.*, ¶¶ 69–70, Ex. 11);

- *Failed* to respond substantively or even with objections to ON's Rule 34 requests for production (*id.*);

- *Failed* to respond substantively or even with objections to ON's Rule 36 requests for admission (*id.*); and

- *Affirmatively refused to provide a witness for deposition as required under Rule 30* (*id.* at 67, Exhibit 12). (Correspondence between MPT and ON regarding securing the noticed deposition and MPT's refusal to respond to issued discovery requests is attached to the Crum Decl. as Exhibits 13–15.)

---

[1] Prior to ON being named as a party to this case, on June 27, 2016, MPT did serve a third-party subpoena under Rule 45, Fed. R. Civ. P. (Crum Decl., ¶¶ 32–33, 72.) ON timely served its objections to MPT's Rule 45 subpoena on July 11, 2016. (*Id.*) ON subsequently produced relevant documents with respect to document request topics which were not objected to on October 7, 2016. (*Id.*, ¶34.)

As a result, here we stand—nearly seven months after MPT filed its counterclaims against ON—ON has done its best to take discovery on these claims and MPT has done absolutely nothing to actually prosecute its claims. (*Id.* at ¶¶ 52–72.) Having reached the "'put up or shut up' moment in [this] lawsuit", ON strongly urges that the Court to rule that MPT must do the latter. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has ..."); *Peack v. Polk Cty. Sheriff's Office*, No. 8:15-CV-2859-T-33JSS, 2017 WL 445750, at *7 (M.D. Fla. Feb. 2, 2017).

II.     **STATEMENTS OF MATERIAL FACTS**

1.      During discovery with ON, MPT has not produced a single document to support any of its claims. (Crum Decl., ¶ 73.)

2.      MPT has failed to timely respond to ON's Requests for Admission. (Crum Decl., ¶¶ 55 & 64.)

3.      MPT has not produced any facts which support any claim that Mr. Grivna personally, and not as an employee of ON, has any connection with the State of Florida.

4.      MPT consciously chose to pretend its claims against ON were not "at issue" despite this Court's clear instructions that discovery proceeds despite any pending motion(s) to dismiss. (Crum Decl., ¶¶ 20, 67–69, Ex. 4, 15.)

5.      MPT has produced no evidence during discovery to support its claim that ON committed an intentional interference with prospective business relationship and advantage. (Crum Decl., ¶ 73.)

6.      The averments in MPT's complaint show that MPT did not have the requisite business relationship or expectation with Plasma-Therm required to support a claim for intentional interference with prospective business relationship and advantage.

7. MPT has produced no evidence during discovery to support its claim that ON tortuously breached a duty of good faith and fair dealing. (Crum Decl., ¶ 73.)

8. MPT has produced no evidence during discovery to support its claim ON and MPT were in a "special relationship" as required under California law to support a claim for tortuous breach of a duty of good faith and fair dealing. (Crum Decl., ¶ 73.)

9. MPT has produced no evidence during discovery to support its claims that ON breached the License Agreement. (Crum Decl., ¶ 73.)

10. MPT has waived the Forum Selection Clause in the License Agreement. (Crum Decl., ¶¶ 7–11, Ex. 3; ¶¶ 55–56, 64, Ex. 11.)

11. MPT has produced no evidence during discovery to support its claims that ON breached the License Agreement by providing Plasma-Therm with confidential information and intellectual property to build a competing machine. (Crum Decl., ¶ 73.)

12. MPT has admitted that no such competing machine even exists. (Crum Decl. ¶¶ 54 & 64, Ex. 11 at 15.)

13. MPT has produced no evidence during discovery to support its claims that ON breached the License Agreement by failing to notify MPT of infringements by Plasma-Therm. (Crum Decl., ¶ 73.)

14. MPT has admitted that Plasma-Therm does not infringe its patents. (*See* Dkt. 109 at n.1, Dkt. 135, and Dkt. 157.)

15. MPT has produced no evidence during discovery to support its claims that ON breached the License Agreement by "Failing, under… to notify MPT of… ON Semi's 'intent' to have Plasma-Therm manufacture an MPT 'licensed product' under the License Agreement." (Crum Decl., ¶ 73.)

16.    MPT has admitted that no such 'licensed product' even exists.  (Crum Decl. ¶¶ 54 & 64, Ex. 11 at 15.)

17.    MPT has produced no evidence during discovery to support its claims that ON breached the License Agreement by "other breaches in accordance with proof." (Crum Decl., ¶ 73.)

## III.   LEGAL STANDARDS

### A.    Legal Standard For Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir.2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

### B.    Legal Standard for Breach of Contract under California Law

A claim for breach of contract, under California law, requires that a plaintiff prove "(1) [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff therefrom." *Neumayer v. Allstate Ins. Co.*, No. CV 16-03508-AB (ASX), 2016 WL 4257691, at *2 (C.D. Cal. Aug. 9, 2016) (*citing Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (citation omitted).)

### C.    Legal Standard for Tortious Breach of Implied Covenant

Claims for breach of the implied covenant of good faith and fair dealing may sound in contract or in tort. However, claims for breach of the implied covenant may only sound in tort when there is a "special relationship" between the parties akin to the insurer-insured relationship. *DiDio v. Jones*, No. CV134949PSGAGRX, 2014 WL 12591625, at *2 (C.D. Cal. May 6, 2014) *(citing Adams v. JP Morgan Chase Bank, N.A.*, No. B245892, 2013 WL 6668792, at *7 (Cal. Ct. App. Dec. 18, 2013) ("[A] plaintiff does not allege a cause of action sounding in tort merely by the alternative labeling of a breach of contract cause of action as a tort cause of action. A plaintiff must still allege a special relationship[.]"); *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182, 206 (2012) ("Outside the insured-insurer relationship and others with similar qualities, breach of the implied covenant of good faith and fair dealing does not give rise to tort damages.") (internal citations omitted)).

The Ninth Circuit has stated that the test for whether a "special relationship" exists is the *Wallis* test. *Kamm v. Tr. Co. of New Jersey,* 42 F.3d 1400 (9th Cir. 1994). The *Wallis* test states:

> For purposes of serving as a predicate to tort liability, we find that the following "similar characteristics" must be present in a contract: (1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Wallis v. Superior Court*, 160 Cal. App. 3d 1109, 1118 (Ct. App. 1984).[2]

---

[2] While the *Wallis* test has been criticized, it has never been rejected. *See U.S. Bank v. Miller*, No. 12-CV-05632-MMM-MANX, 2013 WL 12183654, at *16 (C.D. Cal. Sept. 19, 2013) *(citing Careau & Co. v. Security Pacific Business Credit, Inc*., 222 Cal.App.3d 1371, 1399 (1990) (noting that "the *Floey* court did not see fit to specifically reject ... the Wallis criteria for determining [the] existence" of a special relationship)).

**D.** **Legal Standard for Intentional Interference with Potential Advantageous Business Relationship**

The elements of Florida's intentional interference with potential advantageous business relationship tort are: "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Clearplay, Inc. v. Nissim Corp.*, 555 F. Supp. 2d 1318, 1325 (S.D. Fla. 2008) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla.1994)). With respect to this tort, while a "protected business relationship" need not be evidenced by an enforceable contract, "the alleged business relationship [, however,] must afford the plaintiff existing or prospective legal or contractual rights." *Id.* A mere offer to sell, however, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. *Ethan Allen,* 647 So. 2d at 814.

**E.** **Legal Standard Regarding Discovery Obligations and Failure to Respond to Requests For Admission**

Rule 26(a)(1) is clear—even without receiving any discovery requests—a party is obligated to provide *inter alia* (1) the identification of any witnesses the party may rely on to support its claims or defenses, and (2) a copy of all documents said party may use to support its claims or defenses. FED. R. CIV. P. 26(a)(1).

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." FED. R. CIV. P. 36; *Gutierrez v. Cable Equip. Servs., Inc.*, 620 Fed. Appx. 882 (11th Cir. 2015).

## IV. **EFFECT OF MPT'S CONSCIOUS DECISION TO NOT PROSECUTE ITS CLAIMS AGAINST ON**

As described in the preceding section, the Federal Rules and the Eleventh Circuit have made clear the result of a failure by a party to provide written responses to requests for admission in a timely manner. Those requests are deemed admitted. FED. R. CIV. P. 36. Here, ON served on MPT twelve requests for admission on June 30, 2017. (Crum Decl., ¶¶ 53–56, Ex. 10–11.) MPT's response was due 30 days later, on July 30, 2017. (*Id.* ¶ 59.) Since July 30, 2017 was a Sunday, MPT's responses were then due Monday, July 31, 2017. (*Id.*) MPT failed to serve any written objections by Monday, July 31, 2017.[3] (*Id.* ¶ 64.) As such, under the controlling law of the Eleventh Circuit and the Federal Rules require that the following matters be deemed admitted:

> **REQUEST FOR ADMISSION NO. 1:** Admit that your counterclaim against ON for Intentional Interference With Prospective Business Relationship and Advantage is governed by Florida law.
>
> **REQUEST FOR ADMISSION NO. 2:** Admit that your counterclaim against ON for Breach of Contract is governed by California law.
>
> **REQUEST FOR ADMISSION NO. 3:** Admit that your counterclaim against ON for Tortious Breach of Implied Covenant of Good Faith and Fair Dealing is governed by California Law.
>
> **REQUEST FOR ADMISSION NO. 4:** Admit that MPT has waived the forum selection clause in the License Agreement. (*See ON v. MPT*, Case No. 8:17-cv-322-CEH-JSS, Dec. 15, 2016 Hearing Tr. 30:6–17.)
>
> **REQUEST FOR ADMISSION NO. 5:** Admit that under California law MPT, having waived the forum selection clause in the Licensee Agreement, cannot now

---

[3] It should be noted, on Tuesday, August 1, 2017 at 2:28 AM ET, *over 31 days after ON served its requests*, MPT's counsel did send an email titled "Meet and Confer re MPT's Objections to Attached Discovery". (Crum Decl. at ¶ 65–66, Ex. 15.) In that email, MPT states "The deposition of MPT will not go forward as noticed by ON. [MPT] is moving for a Protective Order with respect to your discovery including the deposition." (*Id.*) MPT goes on to unilaterally assert "[ON's] discovery . . . is premature and we object to it on the grounds the ON case is not 'at issue'; the MPT Counter-Claim against ON is not 'at issue'. . ." (*Id.*) MPT ended its email by stating "P.S. Formal Objections to your above-attached discovery will follow." (*Id.*) This final statement makes it clear that this email was not intended to be the answer to the discovery requests required under Rule 36. Further, an unsigned and untimely email which does nothing to respond to the specific requests does not satisfy the requirements of Rule 36(a)(4).

recover against ON for any alleged failure to comply with the forum selection clause of the License Agreement.

**REQUEST FOR ADMISSION NO. 6:** Admit that the License Agreement does not supersede the Non-Disclosure Agreements entered into by ON and MPT in August of 2010 and August of 2013.

**REQUEST FOR ADMISSION NO. 7:** Admit MPT has no knowledge of any infringements of the Patents-at-Issue manufactured, sold, offered for sale, or imported by Plasma-Therm.

**REQUEST FOR ADMISSION NO. 8:** Admit that as of the date of MPT's response, Plasma-Therm does not infringe any claim of any of the Patents-at-Issue.

**REQUEST FOR ADMISSION NO. 9:** Admit MPT has no knowledge of any machine manufactured and/or jointly developed between ON and Plasma-Therm which competes with any machine MPT built for ON.

**REQUEST FOR ADMISSION NO. 10:** Admit that as of the date of MPT's response, Plasma-Therm does not manufacture a machine which competes with any machine MPT built for ON.

**REQUEST FOR ADMISSION NO. 11:** Admit that Plasma-Therm does not manufacture for ON any MPT Licensed Product as that term is defined in the License Agreement.

**REQUEST FOR ADMISSION NO. 12:** Admit that MPT has conducted a thorough and complete search of its records for documents and things responsive to ON's discovery requests.

(Crum Decl. at Ex. 11, pp. 14–15.)

## V.   ARGUMENT

MPT's three causes of action are all unsupported as a matter of law.  As a result, ON respectfully requests that the Court grant summary judgment in favor of ON with respect to MPT's claims for: (1) breach of a written license agreement (AC, ¶¶ 43–48), (2) tortious breach of the implied covenant of good faith and fair dealing under the License Agreement (AC, ¶¶ 49–52), and (3) intentional interference with prospective business relationship and advantage (AC, ¶¶ 53–56). Further, to the extent any claims are asserted against him, such claims should be dismissed and counter-defendant, Mr. Grivna, should be dismissed because: (1) even accepting as true the

averments in MPT's Amended Counterclaims, this Court does not have personal jurisdiction over Mr. Grivna, and (2) MPT has failed to state any claim or cause of action against Mr. Grivna.

Further, even if one of MPT's claims were to be legally cognizable, after seeking discovery, there appears to be no disputes of material fact with respect to the causes of action. Indeed, ON served discovery directed to the factual bases for MPT's allegations that ON somehow acted improperly with respect to the License Agreement or with respect to MPT's relationship with Plasma-Therm. (Crum Decl., ¶ 53–58, Ex. 11 at 12–13, Ex. 12 at 7–9.) Despite this Court's clear Case Management Order and clear statements that a pending motion to dismiss does not stay discovery, MPT completely failed to prosecute its case or produce any evidence supporting any of its causes of action. (*Id.*, ¶¶ 17–23.) Under Rule 26 a party is required to produce any documents and identify any witnesses it intends to use to support its claims or defenses. FED. R. CIV. P. 26(a)(1). MPT has not produced any documents or identified any witnesses. (Crum Decl., ¶¶ 45–46.) This was MPT's unilateral choice—in direct contradiction of this Court's Orders. MPT should be held to those affirmative strategic decisions and held to its decision to not produce any documents during discovery, to not respond to interrogatories, to not respond to requests for admission, and to not make a witness available for deposition. (Crum Decl., ¶¶ 62–72, Ex. 14–15.)

## A. There Is No Genuine Dispute of Material Fact Regarding This Court's Lack of Personal Jurisdiction over Mr. Grivna.

Mr. Grivna's status, the lack of any claim asserted against him, and his lack of connection with the State of Florida has been briefed to this Court *ad nauseum*. (*See* ON's Motions to Dismiss, Dkt. 112, 127, & 158.) While complicated in certain circumstances, the law of personal jurisdiction in this case is relatively simple and simply does not countenance holding Mr. Grivna subject to personal jurisdiction in the Middle District of Florida. Mr. Grivna is an Arizona Resident

who is only averred to have ever traveled to Florida as an employee conducting work for ON. (*See* AC, ¶ 11.) As a result, this Court clearly does not have general jurisdiction over him. With respect to specific jurisdiction, in the patent context, a court may assert specific jurisdiction upon consideration of the following three due process factors: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355. As it relates to this case, Mr. Grivna's travels to Florida were required by his employer, ON, and Mr. Grivna did not *himself* choose to purposely direct any activities at residences of Florida. While Mr. Grivna's actions *as an employee of ON* may possibly give Florida specific jurisdiction over *ON*, they do not give the State of Florida or this Court personal jurisdiction over Mr. Grivna. This is because of the Corporate Shield doctrine under which "Florida courts have held 'that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Louis Vuitton*, 736 F.3d at 1354. Mr. Grivna himself did not direct any individual activities to Florida. Further, in this case there is no claim asserted against Mr. Grivna, and MPT completely fails to identify any claim or cause of action which Mr. Grivna is allegedly "indispensable to".[4] Finally, with respect to the final prong, the

---

[4] Indeed, after identifying Mr. Grivna as an "indispensable party pursuant to Rule 19(a)", MPT completely fails to explain why, as required under that rule, Mr. Grivna is "[a] person who is subject to service of process" in whose "absence the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action." FED. R. CIV. P. 19(a). Indeed, to the contrary, Mr. Grivna has not asserted any claims in any of the litigations between ON, PT, and/or MPT.

assertion of personal jurisdiction over an individual in his or her individual capacity based on travel as required for his or her job certainly is not "reasonable and fair". The Federal Circuit has held that specific personal jurisdiction simply does not exist where the employee's relation to the state is based solely on his work as an employee: "All of [his] actions in relation to the state of California were taken in his role as an officer of [the company]. [He] did not direct any activities individually toward California. . . Therefore, [the CEO] . . . [is] not subject to personal jurisdiction in California." *3D Systems,* 160 F.3d at 1380–81. This Court along with the Southern District of Florida have repeatedly come to the same conclusion. *See Klayman v. Judicial Watch, Inc.*, No. 13-20610-CIV, 2013 WL 4780139, at *11 (S.D. Fla. Sept. 5, 2013) (holding that defendant's "several visits to Florida to participate in speaking engagements and activities associated with his position as president of Judicial Watch and supervisor of the Miami office of Judicial Watch, do not rise to the level of continuous and systematic contacts"); *see also Int'l Textile Grp., Inc. v. Interamericana Apparel Co., Inc*., No. 08–22859–CIV, 2009 WL 4899404, at *3 (S.D. Fla. Dec.14, 2009) (finding court lacked jurisdiction over defendant where, under corporate shield doctrine, defendant's visits to Florida on behalf of his employer "must not be considered. . . The purpose of these trips [was] to conduct business for the corporations."); *Home Design Servs., Inc. v. Banyan Const. and Dev., Inc*., No. 5:07-cv-5-Oc-10GRJ, 2007 WL 1752435, at *4 (M.D. Fla. June 15, 2007) (no minimum contacts found where foreign defendants' contacts with Florida were defendants' travels to Florida on behalf of foreign corporation and defendants' titles as officers and directors of a Florida wholly-owned subsidiary of the foreign corporation).

Because there is no personal jurisdiction over a defendant whose only connection with the state is via his employment, Mr. Grivna should be dismissed from this case.

**B.** **There Is No Genuine Dispute Of Material Fact That ON Committed A Tortious Breach Of Any Implied Covenant Of Good Faith And Fair Dealing Under The License Agreement.**

There can be no dispute that California law governs MPT's claims regarding breach of the License Agreement, MPT concedes as much in its Amended Counterclaims, stating "ON Semi and MPT entered into a License Agreement . . . which has a venue selection provision under which the parties agreed to [resolve] any disputes . . . under California law." (AC, 5–6.) Further, Request for Admission 3, which states "Admit that your counterclaim against ON for Tortious Breach of Implied Covenant of Good Faith and Fair Dealing is governed by California Law", must be deemed "admitted" under FED. R. CIV. P. 36(a)(3) & (b).

Thus, MPT's claim that ON "tortuously" breached the License Agreement's implied covenant of good faith and fair dealing must be analyzed under California law. *See Sherwin-Williams Co. v. Auto Body Tech, Inc*., No. 12-23362-CIV, 2014 WL 2178000, at *2 (S.D. Fla. May 26, 2014) ("Under Florida law, a valid choice of law provision must be given effect.") Under California law, a cause of action for "tortious" breach of implied covenant of good faith and fair dealing only exists where the parties have a "special relationship." Here, there is no such "special relationship" between the parties and no evidence of one. Indeed, under California law, "tortious" breach of the implied covenant of good faith and fair only exists in insured-insurer relationships or relationships with similar qualities. *Ragland*, 209 Cal. App. 4th at 206 ("Outside the insured-insurer relationship and others with similar qualities, breach of the implied covenant of good faith and fair dealing does not give rise to tort damages.") (internal citations omitted)).

A business relationship between technology companies is *not* akin to the insurer-insured special relationship required to maintain a claim for tortious breach of implied covenant of good faith and fair dealing under the applicable California law. Indeed, the Ninth Circuit has stated that the test for whether a "special relationship" exists is the *Wallis* test. *Kamm,* 42 F.3d at 1400. The

*Wallis* test, recited in full in Section II.C, requires, *inter alia*, (1) inherently unequal bargaining positions, (2) a non-profit motivation, (3) insufficiency of ordinary contract damages, and (4) one party who is especially vulnerable. *Wallis*, 160 Cal. App. 3d at 1118. We have completed discovery and other than the meager averments in the amended counterclaims, no evidence has been produced establishing (1) any of the *Wallis* factors, or (2) that ON breached any implied covenant of good faith and fair dealing under the License Agreement." Indeed, MPT has not produced any documentary or testimonial evidence that any such "special relationship" existed or that ON breached any covenant of the License Agreement. (Crum Decl., ¶ 73.) In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

**C.**    **There Is No Genuine Dispute Of Material Fact That ON Committed Intentional Interference With Prospective Business Relationship And Advantage**

There can be no dispute that Florida law governs MPT's claims regarding intentional interference with prospective business advantage, since Request for Admission 1, which states "Admit that your counterclaim against ON for Intentional Interference With Prospective Business Relationship and Advantage is governed by Florida law", must be deemed "admitted" under FED. R. CIV. P. 36(a)(3) & (b). Under Florida law, the elements of intentional interference with potential advantageous business relationship tort are: "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994) (alteration in original) (*quoting Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla.1985)); *see also Clearplay,* 555 F. Supp. 2d at 1325). Importantly, however, not just

14

any business relationship may be protected. Instead, to be protected "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Ethan Allen,* 647 So.2d at 814; *citing Register v. Pierce*, 530 So.2d 990, 993 (Fla. 1st DCA 1988). For example, a cause of action may exist where the jury could find that an understanding between the parties would have been completed had the defendant not interfered. *United Yacht Brokers v. Gillespie*, 377 So.2d 668 (Fla.1979). But, a mere offer to sell would not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. *Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc*., 361 So.2d 769 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla.1979). Florida law also requires actual harm to a business relationship, as opposed to merely a suspicion or unsupported and speculative supposition of harm. *Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1058 (Fla. 4th DCA 2011).

For a cause of action for tortious interference to exist, MPT must prove that ON engaged in an "intentional and unjustified interference with the relationship" between Plasma-Therm and MPT. *Ethan Allen,* 647 So.2d at 814. In this case, the alleged "intentional and unjustified interference" appears to be ON's collaboration with Plasma-Therm on a back metal processing machine. (*See* AC, ¶ 54 ("without MPT's BMP solution Plasma-Therm did not have a viable BMP solution for its plasma-dicing customers."); *Id*., ¶ 17 ("due to ON Semi's concealment of the material fact that ON Semi was secretly working on a joint development of a back metal separating solution with Plasma-Therm and the joint development of a back metal separating apparatus or machine.").) Yet, MPT has completely failed to provide any evidence supporting these unfounded allegations. There is no evidence that ON's alleged work with Plasma-Therm on a BMP solution was an "intentional and unjustified interference" with any relationship between MPT and Plasma-Therm. Indeed, MPT has affirmatively *admitted* that there was never any contractual or other

prohibitions which would make any collaboration between ON and Plasma-Therm unjustified; to the contrary, "when MPT thought it was close to making a deal with Plasma-Therm, it requested from it a Non-Compete Agreement at which time Plasma-Therm refused to consider signing one." (AC, ¶ 22.)  This admission *by MPT*, that Plasma-Therm never intended to enter into a Non-Compete Agreement, proves that there was nothing "unjustified" about any collaboration between ON and Plasma-Therm which may have taken place.

Further, MPT has affirmatively admitted that no protectable business relationship existed between it and Plasma-Therm.  MPT's allegations, which must be taken as true, are clear and unambiguous—Plasma-Therm was developing its own competing product and was merely "stringing [MPT] along":

> [Plasma Therm] [h]aving convinced MPT it would eventually enter into a business relationship by **stringing it along** while testing its processed wafers; **in the meantime, Plasma-Therm plotted and acted surreptitiously, including in concert with ON Semi, to steal MPT's intellectual property to use in developing a BMP solution before MPT could successfully market and/or enter a distribution agreement with one of the two or three Plasma-Therm competitors in plasma dicing to supply their customers with an MPT BMP solution**. **Plasma-Therm hoped to sell such machinery to those competitors' customers for Plasma-Therm's own profit.** Plasma-Therm had secretly been working with ON Semi and Grivna to design, develop and build such equipment.

(AC, ¶ 35 (emphasis added).)  That is, according to MPT, MPT "devoted energy, effort and knowledge for the purpose of a joint business relationship, which, unbeknownst to MPT, Plasma-Therm never intended to enter into despite its representations to the contrary."  (*Id.* at ¶ 40.)  These averments by MPT make it clear that—regardless of the actions by ON—the alleged business relationship between MPT and Plasma-Therm was non-existent and never would have afforded MPT any existing or prospective legal or contractual rights as required to state a claim for tortious interference. *Ethan Allen,* 647 So.2d at 814; *see also Realauction.com, LLC v. Grant St. Grp., Inc.*, 82 So. 3d 1056, 1058 (Fla. Dist. Ct. App. 2011) (claimant was required to put on evidence that, in

all probability, the defendant would have entered into the contract for services but for the interference); *see also ISS Cleaning Servs.. Group, Inc. v. Cosby*, 745 So.2d 460, 462 (Fla. 4th DCA 1999) (reversing denial of directed verdict where there was not competent substantial evidence of an agreement "which in all probability would have been completed had the alleged interference not occurred."). Because MPT affirmatively asserts that Plasma-Therm never intended to enter into a contractual relationship with MPT for the development of back metal processing equipment, there was never a protectable business relationship between MPT and Plasma-Therm and this tortious interference claim should be denied.

Finally, MPT pleads ON's alleged interference as follows: "at all relevant times herein referenced ON Semi was fully aware of the business relationship **MPT was pursuing with Plasma-Therm**; that without MPT's BMP solution Plasma-Therm did not have a viable BMP solution for its plasma-dicing customers." (AC, ¶ 54 (emphasis added).) Taking this sentence as true—as the Court must for a motion to dismiss—MPT's mere "pursu[it]" of a business relationship is legally insufficient to support the tort of tortious interference:

> To find the existence of such a relationship, the jury need only find that "an understanding between the parties would have been completed had the defendant not interfered." *Landry v. Hornstein*, 462 So.2d 844, 846 (Fla. 3d DCA 1985). The understanding, however, must be such that parties have "some attendant legal rights." *Lake Gateway*, 361 So.2d at 772.

*Rekal Co. v. PGT Indus., Inc*., No. 8:13-CV-1433-T-33TGW, 2013 WL 5487370, at *7 (M.D. Fla. Sept. 30, 2013). Since MPT was, by admission, merely pursuing a business relationship with Plasma-Therm and never had any "attendant legal rights" summary judgment should be granted in ON's favor on this cause of action.

Furthermore, we have now completed discovery and other than the meager averments in the amended counterclaims, no evidence has been produced establishing (1) the existence of a business relationship, (2) knowledge of the relationship on the part of the defendant; (3) an

intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen,* 647 So.2d at 814. Indeed, MPT has not produced any documentary or testimonial evidence that such a relationship existed, that ON knew of said relationship, that ON acted in an "intentional and unjustified way" or that MPT suffered any harm as a result. MPT is "required to put on evidence that, in all probability, the [other party] would have entered into the contract for services but for the interference. *Realauction.com,* 82 So. 3d 1056, 1058. Yet, no such evidence has been adduced by MPT. (Crum Decl., ¶ 73.) In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

**D.      There Is No Genuine Dispute Of Material Fact That ON Breached The License Agreement**

As described above (and as pleaded by MPT), California law governs actions arising out of the License Agreement. (*See* AC, ¶ 15.) Further, Request for Admission 2, which states, "Admit that your counterclaim against ON for Breach of Contract is governed by California law", must be deemed "admitted" under FED. R. CIV. P. 36(a)(3) & (b). Under California law, to plead a claim for breach of contract, a plaintiff must allege "(1) [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff therefrom." *Neumayer,* 2016 WL 4257691 at *2.[5]

Here, MPT has alleged that ON breached the License Agreement in five different ways:

(a) Filing an action in the U.S. District Court in Arizona concerning the same Patents-In-Suit that are subject of this action despite the License Agreement requiring suit to be filed in the U.S. District Court, Northern District of California;

---

[5] This standard is slightly different than Florida law which only requires establishing: (1) the existence of a valid contract; (2) material breach thereof; and (3) damages flowing from the breach. *See Leedom Mgmt. Grp., Inc. v. Perlmutter*, No. 8:11-CV-2108-T-33TBM, 2012 WL 1883765, at *3 (M.D. Fla. May 22, 2012) (*citing Murciano v. Garcia*, 958 So.2d 423, 423 (Fla. 3d DCA 2007).)

(b) On information and belief, providing MPT's confidential information and intellectual property, without MPT's consent, to Plasma-Therm in a joint development project it entered with Plasma-Therm to develop a BMP solution and build it a machine therefor in competition with the machine MPT built for ON Semi and from which MPT had an expectation of profits in the form of future sales to both ON Semi and to Plasma-Therm plasma dicing customers;

(c) Failing to notify MPT of Plasma-Therm's infringements of the Patents-In-Suit and failing to provide MPT with written evidence of those infringements pursuant to provision 8.4;

(d) Failing, under provision 11.4.2, to notify MPT of, on information and belief, ON Semi's "intent" to have Plasma-Therm manufacture an MPT "licensed product" under the License Agreement; and

(e) Other breaches in accordance with proof.

(AC, ¶ 46.)  As explained below, based on the evidence adduced, MPT cannot succeed on any of these claims of breach of the License Agreement.

1.      _MPT's Claim that ON breached the License Agreement by filing correction of inventor and breach of NDA claims in Arizona must fail._

MPT's first allegation of breach of the License Agreement is that ON's filing of a lawsuit in Arizona constituted a breach of the Forum Selection Clause of the License Agreement.  (AC, ¶ 46(a).)  Summary judgement is appropriate with respect to this claim because, on December 15, 2016, MPT's counsel stated to the Court in Arizona just before that Court transferred the ON–MPT litigation to Florida (currently Case No. 8:17-cv-322-CEH-JSS), the following:

THE COURT: Let me ask you about the Forum Selection Clause again. Under your argument it only makes sense to go to Florida. Can the parties waive the Forum Selection Clause and go to Florida absent this Court first sending it to California?

MR. LACORTE [counsel for MPT]: Yes. And I was about to mention that, Your Honor. So effectively ON has waived the Forum Selection Clause by filing here. And MPT has made a clear record that the Forum Selection Clause technically would take this case to ND Cal. But because we're already embroiled in litigation on these same patents in Florida, the preference would be to go there and effectively waive the FC -- the Forum Selection Clause, the FSC.

THE COURT: Did I just hear you say MPT, on the record, waives the Forum Selection Clause for purposes – for the Court's ruling in this case if the Court sends it to Florida?

MR. LACORTE: Yes.

(Crum Decl. ¶¶ 9–11, Ex. 3; *ON Semiconductor Corp., et al. v. Micro Processing Technology*, No. 8:17-cv-322-CEH-JSS, at Dkt. 48 (Dec. 15, 2016 Hrg. Tr.) at 29:24–30:17.)  This point needs to be underscored—on December 15, 2016, MPT affirmatively waived the License Agreement's Forum Selection Clause on the record.  (*Id.*)  Then, just over one month later, MPT asserts the instant cause of action alleging that ON breached that very same clause that MPT affirmatively and unambiguously waived.  (Crum Decl. ¶ 12–13.)  Because MPT has affirmatively waived the forum selection clause, MPT cannot continue to maintain a cause of action against ON asserting ON breached the very same clause.

This conclusion is also admitted to by MPT through its failure to respond to ON's Requests for Admission, Nos. 4 & 5:

> **REQUEST FOR ADMISSION NO. 4:** Admit that MPT has waived the forum selection clause in the License Agreement. (*See ON v. MPT*, Case No. 8:17-cv-322-CEH-JSS, Dec. 15, 2016 Hearing Tr. 30:6–17.)

> **REQUEST FOR ADMISSION NO. 5:** Admit that under California law MPT, having waived the forum selection clause in the Licensee Agreement, cannot now recover against ON for any alleged failure to comply with the forum selection clause of the License Agreement.

(Crum Decl. ¶ 56 & 64, Ex. 11 at 14.)

Furthermore, even setting aside MPT's waiver of that provision.  Contrary to MPT's assertion, the License Agreement **_expressly_** states that a breach of Non-Disclosure Agreement claims are **_not_** related to the License Agreement:  "Notwithstanding the foregoing, this Agreement does not replace or supersede the Non-Disclosure Agreements between the Parties."  (License Agreement (filed under seal on February 16, 2017 as Sealed Document S-98) at § 11.3.)  Because

the parties expressly agreed that the License Agreement would not supersede the Non-Disclosure Agreements, there can be no argument that bringing suit under the Non-Disclosure Agreements was somehow a violation of the venue provision of the License Agreement.

The same is true with respect to the correction of inventorship claims. ON's attempt to correct the record as it relates to inventorship is not prohibited anywhere in the License Agreement. The License Agreement nowhere identifies the three patents-at-issue in the Arizona case (which has now been transferred to Florida), nor does it prohibit asking a Court to correct a mistaken assignment of inventorship. The reality is that ON has not at any point brought a cause of action which arises under the terms of the License Agreement. As a result, there simply cannot be a claim for breach of the Forum Selection Clause in the License Agreement.

Finally, we have now completed discovery and other than the meager averments in the amended counterclaims, no evidence has been produced establishing that ON breached the License Agreement in any way and MPT has not produced any documentary or testimonial evidence that such a breach occurred. (Crum Decl., ¶ 73.) In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

2. *ON did not breach the License Agreement by providing PT with confidential information and intellectual property to build a competing machine.*

MPT's claim that ON provided Plasma-Therm with confidential information is undercut by the fact that MPT has completely failed to identify or even generally describe any such confidential information. Indeed, seven months into this case, ON is still at a loss as to what information of MPT's it is alleged to have shared with Plasma-Therm. ON issued discovery requests and interrogatories and even sought a deposition to figure out what MPT is alleging. (*See* Crum Decl. ¶¶ 55–58, Ex. 11 at 6–13, Ex. 12 at 7–9.) MPT unilaterally decided, however, that the rules of discovery do not apply, and has refused to answer ON's discovery requests. (*Id.* ¶¶ 59–

73.)  To the extent possible, ON has tried to glean this information from the Affirmative Counterclaims filed in this case, but in the Counterclaims, MPT repeatedly states that the confidential information is information related to the "Patents-In-Suit".  Such information related to the "Patents-In-Suit" is all publicly available, since the patents are publically published by the U.S. Patent and Trademark Office, and not in any way confidential.

Finally, the Parties have completed discovery and other than the meager averments in the amended counterclaims, no evidence has been produced establishing that ON breached the License Agreement in any way and MPT has not produced any documentary or testimonial evidence that ON provided any confidential information or *any* intellectual property to Plasma-Therm.  (Crum Decl., ¶ 73.)  MPT has not identified the confidential information it asserts was conveyed to Plasma-Therm and has provided no evidence that any such information was indeed confidential or belonged to MPT.  (*Id.*)  This is despite the fact that ON actively sought any such evidence during discovery.  (*See* Crum Decl. ¶¶ 55–58, Ex. 11 at 6–13, Ex. 12 at 7–9.)  And MPT had an obligation to produce it.  FED. R. CIV. P. 26, 30, 33, & 34.  In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

3.     *ON did not breach the License Agreement by failing to notify MPT of Plasma-Therm's infringements.*

At this point, MPT has admitted, beyond any doubt, that Plasma-Therm has not infringed any of MPT's patents.  MPT has represented to this Court on at least three occasions that there is no infringement.  (*See* Dkt. 109 at n.1, Dkt. 135, and Dkt. 157.)  Furthermore, MPT has admitted as much through its failure to respond to ON's Requests For Admission, Nos. 7–11:

> **REQUEST FOR ADMISSION NO. 7:** Admit MPT has no knowledge of any infringements of the Patents-at-Issue manufactured, sold, offered for sale, or imported by Plasma-Therm.

**REQUEST FOR ADMISSION NO. 8:** Admit that as of the date of MPT's response, Plasma-Therm does not infringe any claim of any of the Patents-at-Issue.

**REQUEST FOR ADMISSION NO. 9:** Admit MPT has no knowledge of any machine manufactured and/or jointly developed between ON and Plasma-Therm which competes with any machine MPT built for ON.

**REQUEST FOR ADMISSION NO. 10:** Admit that as of the date of MPT's response, Plasma-Therm does not manufacture a machine which competes with any machine MPT built for ON.

**REQUEST FOR ADMISSION NO. 11:** Admit that Plasma-Therm does not manufacture for ON any MPT Licensed Product as that term is defined in the License Agreement.

(Crum Decl. ¶¶ 54 & 64, Ex. 11 at 15.))  Because there is no infringement by Plasma-Therm, ON cannot be found to have breached the License Agreement by failing to notify MPT that Plasma-Therm infringed any of MPT's patents.

In addition, the Parties have completed discovery and other than the meager averments in the amended counterclaims, no evidence has been produced establishing that ON breached the License Agreement in any way and MPT has not produced any documentary or testimonial evidence that Plasma-Therm infringed any MPT patent or that ON at any time knew of any such breach.  (Crum Decl., ¶ 73.)  This is despite the fact that ON actively sought any such evidence during discovery.  (*See* Crum Decl. ¶¶ 55–58, Ex. 11 at 6–13, Ex. 12 at 7–9.)  And MPT had an obligation to produce it.  Fed. R. Civ. P. 26, 30, 33, 34.  In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

4.    *ON did not breach the License Agreement by not complying with non-existent provision "11.4.2."*

In its Amended Counterclaims, MPT alleges that ON breached the License Agreement because ON failed to complying with Section 11.4.2 of the License Agreement.  Such a breach is

impossible, because that section does not exist. That is, there *is no Section 11.4.2* for ON to have breached. In its Response to ON's Motion to Dismiss (Dkt. 129), MPT has alleged that what MPT meant to claim was that ON breached a different section, Section 11.12.2, by "Failing, under… to notify MPT of… ON Semi's 'intent' to have Plasma-Therm manufacture an MPT 'licensed product' under the License Agreement." (Resp. to Mot. to Dismiss (Dkt. 129), 13.) According to MPT, that provision requires that "ON …will notify MPT in writing of the name and address of any third party that ON…intends to have manufacture an MPT licensed product for ON's… use…". (*Id.*) Once again, the documents filed in this case are completely silent about what this mystery licensed product that "ON … intends to have manufacture[d]" actually is, and this claim is belied by MPT's admissions through its failure to respond to ON's Requests for Admission, Nos. 9–11:

> **REQUEST FOR ADMISSION NO. 9:** Admit MPT has no knowledge of any machine manufactured and/or jointly developed between ON and Plasma-Therm which competes with any machine MPT built for ON.

> **REQUEST FOR ADMISSION NO. 10:** Admit that as of the date of MPT's response, Plasma-Therm does not manufacture a machine which competes with any machine MPT built for ON.

> **REQUEST FOR ADMISSION NO. 11:** Admit that Plasma-Therm does not manufacture for ON any MPT Licensed Product as that term is defined in the License Agreement.

(Crum Decl. ¶¶ 54 & 64, Ex. 11 at 15.)) Because Plasma-Therm does not manufacture for ON any MPT Licensed Product or any other machine which competes with any machine MPT built for ON, ON cannot be found to have breached the License Agreement by failing to notify MPT that it intends to use such a machine.

In addition, the Parties have completed discovery and other than the meager averments in the amended counterclaims, no evidence has been produced establishing that ON breached the License Agreement in any way and MPT has not produced any documentary or testimonial

evidence that ON currently or in the future plans to have Plasma-Therm manufacture a machine which would fall under the notification requirement of Section 11.12.2.  (Crum Decl. ¶ 73.)  This is despite the fact that ON actively sought any such evidence during discovery.  (*See* Crum Decl. ¶¶ 55–58, Ex. 11 at 6–13, Ex. 12 at 7–9.)  And MPT had an obligation to produce it.  FED. R. CIV. P. 26, 30, 33, 34.  In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

5. *MPT has failed to sufficiently allege any "other breaches in accordance with proof."*

Finally, MPT's final allegation of breach of contract states solely that ON has committed "other breaches in accordance with proof."  Such an allegation is entirely insufficient.  Despite the insufficient nature of the pleading, ON actively sought any evidence supporting this claim during discovery.  (*See* Crum Decl. ¶¶ 55–58, Ex. 11 at 12 (Interrogatory No. 3), Ex. 12 at 8 (Topic 5).)  And MPT had an obligation to produce it.  Fed. R. Civ. P. 26, 30, 33, 34.  No such evidence was ever produced.  (Crum Decl., ¶ 73.)  In short, there is "an absence of evidence to support the nonmoving party's case" and summary judgment is appropriate. *Celotex*, 477 U.S. at 325.

## VI.   CONCLUSION

For the reasons stated above, there is "an absence of evidence to support the nonmoving party's case" and summary judgment in favor of ON with respect to all claims asserted against ON is appropriate. *Celotex*, 477 U.S. at 325.


Dated: August 4, 2017


*/s/ Isaac S. Crum*
QUARLES & BRADY LLP
Kelli A. Edson
E-mail: Kelli.Edson@quarles.com

Florida Bar No. 179078
101 East Kennedy Boulevard
Suite 3400
Tampa, Florida, 33602
Telephone: (813) 387-0300
Facsimile: (813) 387-1768

QUARLES & BRADY LLP
Gregory P. Sitrick (*pro hac vice application forthcoming*)
E-mail: Gregory.sitrick@quarles.com
Isaac S. Crum (*pro hac vice*)
E-mail: Isaac.Crum@quarles.com
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5317
Facsimile: (602) 420-5198

*Attorneys for ON Semiconductor Corporation, Semiconductor Component Industries, LLC, and Gordon Grivna*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 4, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Isaac S. Crum