UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PLASMA-THERM, LLC,

     Plaintiff,

v.                                                                    Case No: 8:15-cv-2785-T-36TBM

MICRO PROCESSING TECHNOLOGY,
INC.,

     Defendant.

_____/

## **O R D E R**

This matter comes before the Court upon Plaintiff/Counter-Defendant Plasma-Therm, LLC's ("Plasma-Therm") Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 against Defendant/Counter-Plaintiff Micro Processing Technology, Inc. ("MPT") (Doc. 100). In the motion, Plasma-Therm seeks sanctions against MPT and its attorneys for failing to conduct the required pre-filing investigation before filing its counterclaims alleging that Plasma-Therm has infringed U.S. Patent Nos. 8,450,188 ("the '188 patent"), 8,906,745 ("the '745 patent"), and 9,153,493 ("the '493 patent") (collectively, "the patents-in-suit"). MPT responded in opposition (Doc. 111) and Plasma-Therm replied in support of its motion (Doc. 124). The Court previously deferred ruling on the motion pending the conclusion of this litigation on the merits.[1] Doc. 181. Litigation has since concluded. The Court, having considered the parties' submissions and being fully advised in the premises, will now grant the motion.

---

[1] As described in the Court's order deferring ruling, because motions for sanctions tend to distract the parties from the merits of the litigation, the Court prefers to adjudicate motions for sanctions at the conclusion of the litigation.

I.      **Relevant Background**

On November 27, 2015, MPT sent a demand letter to Plasma-Therm alleging that Plasma-Therm was infringing MPT's intellectual property rights with regard to its back metal processing technology. Doc. 100-1. On December 3, 2015, Plasma-Therm commenced this declaratory judgment action against MPT, seeking a declaration of non-infringement with respect to the patents-in-suit. Doc. 1 at ¶ 1.

The patents-in-suit generally relate to processing of semiconductor devices where, as part of the fabrication process, a semiconductor wafer is mounted on a metal base layer or back metal. The patents-in-suit describe several methods of breaking or cutting the back metal layer to complete the singulation of the individual devices. The '745 patent, entitled "Method Using Fluid Pressure To Remove Back Metal From Semiconductor Wafer Scribe Sheets," generally relates to breaking the back metal layer using a pressurized liquid. The '188 patent, entitled "Method Of Removing Back Metal From An Etched Semiconductor Scribe Street," generally relates to cutting the back metal layer using a cutting tool. The '493 patent, entitled "System For Separating Devices From A Semiconductor Wafer," generally relates to breaking the back metal layer by applying pressure with a stylus. Doc. 101.

MPT served Plasma-Therm with its preliminary infringement contentions as to the '745 patent on June 17, 2016. Doc. 50-2. Those contentions stated: "Upon the information currently available to MPT and its belief, MPT contends that Plasma-Therm is infringing or infringed on [the '745 patent] by practicing each element of claims 1 and 19 [of] the ['745 patent]." Doc. 50-2 at p. 2. MPT served Plasma-Therm with amended preliminary infringement contentions on October 3, 2016 to include additional contentions about the '188 patent Doc. 55-1. The additional contentions stated: "Upon the information currently available to MPT and its belief, MPT contends

that Plasma-Therm is infringing or infringed on [the '188 patent] by practicing each element of at least claims 1, 16, and 17 of the ['188 patent]." Doc. 55-1 at p. 2. MPT subsequently served its second amended preliminary infringement contentions, which included additional contentions about the '493 patent. Doc. 100-6. The additional contentions stated: "Upon the information currently available to MPT and its and [sic] belief, MPT contends that Plasma-Therm is infringing or infringed on the '493 Patent by practicing each step of at least claim 1 of the '493 [p]atent." Doc. 100-6 at p. 3.

Plasma-Therm filed motions to strike MPT's preliminary infringement contentions, arguing that MPT lacked diligence in preparing its contentions, that the contentions were untimely, and that the contentions lacked sufficient detail. Doc. 50 at pp. 6-7; Doc. 55 at pp. 2-3. The Court denied Plasma-Therm's motions to strike MPT's preliminary infringement contentions, determining that "[a]lthough MPT's contentions are sparse, they principally give [Plasma-Therm] notice of its preliminary infringement theories . . . ." Doc. 79 at p. 13. Moreover, the Court noted that the parties would have an opportunity to file final infringement contentions after the completion of discovery, which should then more clearly and thoroughly define the infringement theories. Doc. 79 at p. 13.

MPT filed its counterclaims against Plasma-Therm approximately one month thereafter, on January 18, 2017. Doc. 85. The counterclaims alleged patent infringement of each of the patents-in-suit (Counts I, II, and III), misappropriation of trade secrets (Counts IV and V), breach of contract (Count VI), and fraud (Count VII). Doc. 85 at ¶¶ 28-70.

According to the counterclaims, MPT manufactured equipment in one of the most important steps of manufacturing semiconductors. Doc. 85 at ¶ 19. That step, known as "back metal cleaving," "back metal separation," or "back metal processing," (the "second step") is

conducted after another step known as "plasma dicing" or "etching" (the "first step"). Doc. 85 at ¶ 19.

Plasma-Therm represented to MPT that its only business interest, with respect to designing and building, was in the first step. Doc. 85 at ¶ 23. However, Plasma-Therm was looking for a third party to supply technology for the second step to its customers. Doc. 85 at ¶ 23. Therefore, MPT worked closely with Plasma-Therm, attempting to persuade Plasma-Therm to enter into business with MPT, whereby MPT would distribute its technology for the second step to Plasma-Therm's customers. Doc. 85 at ¶ 22.

Based on Plasma-Therm's representation that it was not interested in building second-step machinery, and as part of its efforts to solicit Plasma-Therm's business, MPT shared with Plasma-Therm MPT's intellectual property, trade secrets in implementing its patent designs, and methods for producing machines. Doc. 85 at ¶ 23. In addition, MPT allowed Plasma-Therm to visit MPT's facilities and to examine its second-step machinery. Doc. 85 at ¶ 24. When MPT thought it was close to making a deal with Plasma-Therm, it requested Plasma-Therm sign a non-compete agreement. Doc. 85 at ¶ 23. Plasma-Therm refused. Doc. 85 at ¶ 23.

MPT learned that ON Semiconductor Corporation and Semiconductor Component Industries, LLC (collectively, "ON Semi"),[2] with which MPT had a mutual for-profit business relationship, had been jointly working with Plasma-Therm on seeking step two solutions.  Doc. 85 at ¶¶ 19-20. MPT's and ON Semi's relationship involved jointly developing  and agreeing to employ projects for identifying ideas, including those leading to and underlying the patents-in-suit. Doc. 85 at ¶ 20. Pursuant to an agreement, MPT supplied ON Semi with a step two machine that incorporated designs and methods set forth in the '493 patent. Doc. 85 at ¶ 21.

---

[2] ON Semi was brought into the lawsuit by MPT. Doc. 85. However, ON Semi is not a party to the instant motion for sanctions.

MPT further alleged, on information and belief, that ON Semi shared MPT's ideas and trade secrets related to and including the patents-in-suit with Plasma-Therm, or, that Plasma-Therm gained access to MPT's trade secrets as a result of its visits to MPT's facilities and meetings. Doc. 85 at ¶ 25. Plasma-Therm then entered into distribution agreements with one or more companies to sell step-two devices using MPT's intellectual property, including the patents-in-suit. Doc. 85 at ¶ 26.

With respect to Counts I through III of the counterclaims, MPT further alleged that Plasma-Therm "infringed and continues to infringe directly and indirectly, through contributory and/or induced infringement," one or more of the claims of each patent-in-suit by "making, using, selling, and/or offering to sell . . . infringing products." Doc. 85 at ¶¶ 28-42.

Plasma-Therm filed a motion to dismiss Counts I through III and V of MPT's Counterclaim on February 14, 2017. Doc. 97.[3] On February 27, 2017, Plasma-Therm filed the instant motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Doc. 100.

The following day, the Court entered an order construing three disputed claim terms, which were previously briefed by MPT and Plasma-Therm and on which the Court had previously held a hearing. Doc. 56; Doc. 57; Doc. 69; Doc. 70; Doc. 78; Doc. 101. The Court agreed with each of Plasma-Therm's proposed claim constructions, construing "pressurizing fluid contacting" / "pressurizing fluid contacting said sheet of deformable material" with respect to the '745 patent to mean "applying pressure to a fluid already in contact with said sheet of deformable material"; construing "cutting said metal layer" with respect to the '188 patent to mean "shearing the metal layer with a blade"; and construing "variable radial force" with respect to the '493 patent to mean "spatially non-uniform radial force." Doc. 101. The Court rejected MPT's broader constructions,

---

[3] The Court later denied Plasma-Therm's motion to dismiss as moot due to MPT's voluntary dismissal. Doc. 114.

finding, in part, that they were overly broad, ignored the plain language of the claim, specification, and prosecution history. Doc. 101 at pp. 6-11.

Less than a month after the Court's order construing the disputed claim terms, MPT filed a notice of voluntary dismissal without prejudice, dismissing Counts I through V of its counterclaims against Plasma-Therm. Doc. 109. The parties later settled the case in full, with the exception of the instant motion for sanctions.

## II.    Legal Standard

Rule 11 provides that an attorney who submits a pleading to the court certifies that the "pleading is well-grounded in fact, legally tenable, and 'is not presented for any improper purpose.'" *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir. 1998) (quoting Fed. R. Civ. P. 11(b)). Any person who violates Rule 11 may be sanctioned by the court. *See* Fed. R. Civ. P. 11(c). To determine whether Rule 11 sanctions are warranted, a court asks "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Alderman*, 158 F.3d at 524.  Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) is filed in bad faith for an improper purpose. *See Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003). "With regard to patent infringement suits," the Federal Circuit has interpreted Rule 11 to require "a two-step pre-filing analysis: (1) an investigation into the legal basis of the claim of patent infringement (i.e., a pre-filing 'claim interpretation analysis'); and (2) a fact-intensive comparison of the accused product and the asserted claim(s)." *PPS Data, LLC v. Athenahealth, Inc.*, No. 3:11-CV-746-J-37TEM, 2012 WL 601208, at *1 (M.D. Fla. Feb. 23, 2012) (citing *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d

1295, 1300-01 (Fed. Cir. 2004) ("In the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.")). *See also View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("Rule 11 . . . require[s] the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.").

## III.    Discussion

The gravamen of Plasma-Therm's motion for sanctions is that MPT's counterclaims were frivolous and without foundation in law or fact. According to Plasma-Therm, MPT failed to meet the exacting pre-filing investigation standard of Rule 11 prior to filing its counterclaims accusing Plasma-Therm of infringing the patents-in-suit. Plasma-Therm contends that MPT's counterclaims did not identify any allegedly infringing product or conduct. Plasma-Therm also contends that MPT's discovery responses further confirm that MPT did not conduct the required infringement analysis, and instead based its counterclaims on unfounded speculation. Rather, Plasma-Therm contends, MPT's counterclaims were based on "mere suspicion" that Plasma-Therm must be infringing the patents-in-suit because Plasma-Therm declined to conduct business with MPT and is currently conducting business with ON Semi. MPT raises at least four separate arguments in response, each of which the Court addresses in turn.

Two of MPT's arguments are easily addressed, and the Court will discuss those first.  MPT contends that its counterclaims were compulsory; thus, MPT was required to file them at an early stage despite the fact that the parties were in the early stages of discovery. But, as Plasma-Therm points out in its reply, the fact that a counterclaim may be compulsory does not excuse a litigant

or counsel from compliance with Rule 11. *See e.g., View Eng'g, Inc.*, 208 F.3d at 986 (affirming Rule 11 sanctions on defendant who filed counterclaims of patent infringement without reasonable inquiry following plaintiff's declaratory action seeking to have defendant's patent declared invalid, or in the alternative, a finding of no infringement).

Second, MPT contends that Plasma-Therm's sanctions motion is a disguised motion to dismiss because Plasma-Therm suggests MPT's counterclaims made bald assumptions, relied on general statements, and failed to provide details. Accordingly, MPT alleges, Plasma-Therm is actually asking the Court to test the legal sufficiency of MPT's counterclaims rather than address whether there has been an abuse of the judicial process in violation of Rule 11.

The Court disagrees. With respect to patent infringement claims, Rule 11 asks whether there was, at a minimum, a reasonable basis for a finding of infringement. Though not the only factor, the content of the pleadings is relevant to that analysis.

Turning to MPT's other arguments, MPT contends that Plasma-Therm applies the wrong legal standard in its motion for sanctions, thereby placing an "improper burden" on MPT to prove that it conducted the requisite pre-filing investigation. Rather, MPT states, a different standard applies under Rule 11 for method claim actions than for product claim actions, and the standard for "establishing a product infringement claim is a more rigorous undertaking." MPT contends that because its counterclaims were not based on a product claim dispute, MPT was "reliev[ed] . . . of the fact-intensive comparison" between the accused product(s) and the asserted claims. In reply, Plasma-Therm asserts that MPT's distinction between a claim for infringement of a method patent and a claim for infringement of a product patent for purposes of Rule 11 is fabricated.

None of the cases MPT cites support its theory that a different pre-filing standard exists with respect to patent infringement claims involving a method. *Q-Pharma, Inc.*, 360 F.3d at 1300-

01 (analyzing a patent "directed to a method" and stating that "[i]n the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement"); *PPS Data, LLC*, 2012 WL 601208, at *1 (describing pre-filing analysis). Other case law on the topic of Rule 11 sanctions does not support MPT's assertion, either. *See, e.g.*, *Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997) (analyzing whether claimant and attorney adequately compared accused devices with patent claims involving a method). Therefore, the Court finds no basis to adopt MPT's contention that it did not need to conduct a factual inquiry prior to filing suit.[4]

Lastly, MPT contends that it did, in fact, have a reasonable basis to file its counterclaims. That reasonable basis, MPT states, was its "good faith constructions" of its claims and the "insufficient information" from Plasma-Therm. MPT alleges it "had no choice" but to base the counterclaims on its constructions of the patents-in-suit because, at the time MPT was required to file its counterclaims, Plasma-Therm had "failed to allege any facts regarding the concrete steps it ha[d] taken to conduct infringing activity, as required to establish a claim for declaratory relief," had not responded to MPT's June 2016 discovery requests, and had provided deficient information.

Plasma-Therm replies that reliance on the parties' claim constructions is inadequate for purposes of Rule 11, and that MPT's excuses regarding Plasma-Therm's conduct are false and/or irrelevant.

As an initial matter, it is not clear, as MPT suggests, that the parties were still in the early stages of discovery at the time MPT filed its counterclaims. By the time MPT filed its counterclaims on January 18, 2017, the lawsuit had been pending for more than one year and,

---

[4] Moreover, MPT's counterclaims specifically allege that Plasma-Therm was "making, using, selling, and/or offering to sell . . . *infringing products.*" Doc. 85 at ¶¶ 29, 34, 39 (emphasis added).

based on the parties' representations, at least some discovery had been exchanged. Doc. 124-1; Doc. 124 at pp. 4-5 (stating that Plasma-Therm served discovery responses and objections to MPT on July 27, 2016 and that Plasma-Therm produced more than 10,000 pages of documents on October 7, 2016). Moreover, the Court previously rejected MPT's argument that Plasma-Therm did not provide sufficient factual matter in its declaratory judgment action. Doc. 79.

Nonetheless, MPT does not cite to any case law that supports its suggestion that a party is excused from its Rule 11 obligations based on an opposing party's alleged failure to comply with the collection of information. Indeed, the focus of a Rule 11 inquiry is generally on the filing party's knowledge, belief, and conduct. *View Eng'g, Inc.*, 208 F.3d at 986. Absent "sound excuse or considerable mitigating circumstances," a filing party's failure to demonstrate "exactly why it believed before filing the claim that it had a reasonable chance of proving infringement" should result in the Court ruling in favor of Rule 11 sanctions. *Id.* Here, MPT does not provide sufficient information to suggest a sound excuse or mitigating circumstances such that MPT should be exempt from demonstrating exactly why it believed it had a reasonable chance of proving infringement.

MPT's statements that it had a reasonable basis to file its counterclaims are unsupported. "[C]ase law makes clear that the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis. And an infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *Q-Pharma, Inc.*, 360 F.3d at 1302 (citations omitted) (concluding that the claim of infringement was supported by a sufficient factual basis "[b]ecause Q-Pharma obtained a sample of the accused product, reviewed Jergens' statements made in the advertising and labeling of the accused product, and, most importantly, compared the claims of the patent with

10

the accused product"). *See also Source Vagabond Sys. Ltd. v. Hydrapack, Inc.*, 753 F.3d 1291, 1302 (Fed. Cir. 2014) (affirming district court's imposition of Rule 11 sanctions where opposition motion lacked sufficient analysis, restated its claim construction arguments, and provided a declaration asserting that the attorney analyzed a sample to ascertain infringement).

Here, MPT has not shown why, prior to filing suit, MPT believed its claim of infringement was meritorious. MPT has not compared any product, process, or method utilized by Plasma Therm to the patents-in-suit. Nor has MPT even identified any such product, process, or method utilized by Plasma-Therm against which the patents-in-suit could have been compared. *See Judin*, 110 F.3d at 784 (Viewing an alleged infringing device "may have been sufficient to put Judin on inquiry about whether the Government was using a device that infringed his patent. But Rule 11 requires more. It requires that the inquiry be undertaken before the suit is filed, not after.").

The only explanation MPT gives as to why it believed it had a reasonable chance of proving infringement is provided in a footnote, in which MPT states that "if Plasma-Therm practiced the disputed claims in the way Plasma-Therm implies it did in its claims constructions it would infringe the claims as construed by MPT." Doc. 111 at p. 2, n. 3. But Plasma-Therm's claim construction brief does not explain its own products, processes, or methods. Rather, Plasma-Therm's claim construction brief describes only the patents-in-suit, including the specification and prosecution, to explain why the disputed claim terms should be construed as Plasma-Therm suggests. To the extent MPT draws inferences about Plasma-Therm's product, processes, or method from Plasma-Therm's advocacy of certain claim constructions, this is not explained. Nor would such inferences have necessarily been reasonable and sufficient for MPT to meet its burden under Rule 11 given the Court's rejection of MPT's claim constructions. *See Source Vagabond Sys. Ltd.*, 753 F.3d at 1302. Finally, MPT's responses to Plasma-Therm's discovery requests,

attached to Plasma-Therm's motion, also do not demonstrate that MPT conducted any claim comparison or provided any other support of its belief that it had a reasonable chance of proving infringement against Plasma-Therm.

MPT has failed to offer *any* evidence that it had a reasonable belief that its infringement claims against Plasma-Therm would be meritorious. *See Source Vagabond Sys. Ltd.*, 753 F.3d at 1302. Neither MPT nor its counsel even suggest that they attempted to apply the claims of the patents-in-suit to any accused device, method, process, or product of Plasma-Therm. The failure of MPT and its attorneys to make reasonable inquiry before filing the frivolous infringement counterclaims warrants Rule 11 sanctions.

It is appropriate to apply Rule 11 sanctions to deter future frivolous lawsuits. Therefore, the Court will impose sanctions against MPT and its attorneys and their law firms, Anthony A. Ferrigno, Esq. and the Law Offices of Anthony A. Ferrigno, Lawrence E. Laubscher, Jr., Esq. and Laubscher Spendlove & Laubscher, P.C., Donald H. Crawford II, Esq., Robert D. Zebro, Esq., and Cope, Zebro & Crawford, P.L., awarding Plasma-Therm reasonable attorneys' fees and costs for defense of the infringing counterclaims in Counts I through III, to be paid jointly and severally. A determination of reasonableness should include a consideration of financial ability to pay.

Accordingly, it is hereby **ORDERED** as follows:

1.    Plaintiff/Counter-Defendant Plasma-Therm, LLC's Motion for Sanctions (Doc. 100) is **GRANTED.**

2.    Rule 11 sanctions are hereby applied against MPT and its attorneys and their law firms, Anthony A. Ferrigno, Esq. and the Law Offices of Anthony A. Ferrigno, Lawrence E. Laubscher, Jr., Esq. and Laubscher Spendlove &

Laubscher, P.C., Donald H. Crawford II, Esq., Robert D. Zebro, Esq., and Cope, Zebro & Crawford, P.L.

3.   Plaintiff/Counter-Defendant Plasma-Therm, LLC shall file on or before November 13, 2018 a supplemental memorandum, outlining the attorneys' fees and costs incurred in defending Defendant/Counter-Plaintiff Micro Processing Technology, Inc.'s counterclaims in Counts I through III, including affidavits and billing statements, which support an award of reasonable attorneys' fees and costs.  MPT and its attorneys shall respond to the supplemental memorandum within fourteen (14) days after its filing.

4.   The parties are directed to attempt to resolve the amount of reasonable attorneys' fees and cost within **sixty (60)** days of the date of this Order and promptly advise the Court of such settlement. If the parties are unable to agree on a reasonable amount of attorneys' fees and costs, the Court will determine the amount on the parties' written submissions.

**DONE AND ORDERED** in Tampa, Florida on October 23, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any